187 P.2d 642
**LaRUE v. KOSICH.**
No. 4899.

Supreme Court of Arizona.

Dec. 8, 1947.

Krucker & Fowler, of Tucson, for appellant.

John W. Ross, of Tucson, for appellee.

DON T. UDALL, Superior Judge.

This is an appeal from a judgment in favor of plaintiff awarding him a prescriptive right to the use of a certain roadway across a portion of defendant's land described as the north 12 feet of Lot 1 in Block 1 of Oracle Park Addition to the City of Tucson, Pima County, Arizona, and enjoining the maintenance of obstructions thereon. The case was tried to the court without a jury.

The evidence reveals that plaintiff maintained a home and poultry business on a small tract of land located about 125 feet west of Lot 1 and used such roadway in connection with his business. The plaintiff's property is situated outside the city limits, the south line of which coincides with the north boundary of the 'City of Tucson, while Lot 1 is bounded on the north by the Tucson City Limits. Lot 2, Block 2, connects the two properties. The roadway in question extends over Lots 1 & 2, and intersects 12th Avenue (also known as "Main Street", and sometimes referred to as "Oracle Road") on the east and 13th Avenue on the west. The defendant purchased lot 1, block 1, together with other lands, by a sales contract from Arizona Building Company, a corporation, on September 25, 1944.

Shortly before the bringing of this action, January 18th, 1945, defendant erected a seven foot wire fence running north and south across the roadway and along the north boundary of lot 1, thus obstructing its free use. The fence also enclosed other lots not involved herein. Prior to the building of the fence this area had been open and unenclosed for many years and the general public had used it indiscriminately and at will. As early as June, 1922, there was a well-defined roadway running east and west across lots 1 and 2. About the same year, plaintiff moved onto the small tract of land and began to use the roadway along with other persons who had been using it before he came there. The passageway across lot 1, where it opened onto Main Street, was a focal point for several roads and trails which fanned out in various directions across the unenclosed land. There are two other ways of ingress and egress to plaintiff's property: one by a wide alley to the west of his property running north and the other by 13th Avenue, a public street, on which plaintiff's property abuts. Plaintiff does not claim "a way of necessity".

The evidence further discloses that prior to the building of the fence in question, plaintiff never apprised the defendant or his predecessors in interest that he claimed an adverse use to the roadway across lot 1. However, either in the year 1937 or 1938, plaintiff offered to purchase this property from the corporation owning it at that

time but the sale thereof was refused by the owner. Even then, plaintiff did not assert his right to use the roadway as a private right-of-way. But, in this connection, it should be stated that sometime during one of the years preceding the commencement of this action, the exact time not appearing in the record, plaintiff filled some chuck holes that appeared on the roadway and also hired a man to haul to the roadway certain dirt that had accumulated in plaintiff's field. Plaintiff further testified that either in the year 1937 or 1938 the State Highway Department paved 12th Avenue and proposed putting in solid curbing where the roadway in question intersected said avenue. Plaintiff said he objected to this type of paving going in there and as a result the Highway Department laid a depressed sidewalk at that point instead of putting in solid curbing. The Highway Engineer in charge of this construction denied that anyone had ever protested the methods used in paving this particular street and further stated that a depressed sidewalk at the point above mentioned was a part of the original plan of construction.

The court concluded, as a matter of law, that the use of the roadway as shown by the evidence was adverse for more than ten years, a sufficient length of time to establish a prescriptive right therein in plaintiff for the maintenance and the use of the roadway; that the action of defendant in constructing a fence across the roadway thereby obstructing same was unlawful and an invasion of the vested rights of the plaintiff; that plaintiff was entitled to an order permanently restraining defendant from maintaining said fence across said roadway on Lot 1 in Block 1 of Oracle Park Addition, and directing defendant to remove all obstructions from plaintiff's right-of-way, leaving open for plaintiff's use and convenience and for the use of his agents, employees, and customers, a strip of land at least twelve feet in width along the north side of said lot 1, block 1. Judgment was entered accordingly.

The defendant contends: (1) that before an easement across the land of another can be acquired by prescription, it is necessary that the use be under a claim of right, hostile and adverse to the owner; (2) that the adverse use must be exclusive; and (3) that mere use of a way for the required time across unenclosed land is not sufficient to establish an easement. We will not examine the propositions of law separately, but instead consider them under one heading, namely: Has the plaintiff acquired an easement by prescription to the road which runs across the land of defendant?

The case which seems to be relied upon most heavily by the courts in the Western States in determining whether the elements of prescription are shown by the evidence to be present in a given case, and one which this court will use as a guide in arriving at a conclusion, is Clarke v.

Clarke, 133 Cal. 667, 66 P. 10, 11. We quote:

"Prescription, at common law, was a mode of acquiring title to incorporeal hereditaments by immemorial or long-continued enjoyment. It had its origin in a grant, evidenced by usage, and was allowed on account of its loss, either actual or supposed, and for this reason only those things could be prescribed for which could be created by grant. The presumption of the grant of an easement in the lands or over the lands of another is sometimes indulged. When so, it is upon the ground that the owner of the land has submitted to the use, without objection, for such length of time that his conduct cannot be accounted for upon any other hypothesis. The acts done by the party claiming the benefit of the presumption, and his predecessors in estate, must, however, have been in themselves such as the other party, having the right to object to or complain of, did neither, but submitted to them without objection or challenge. Hanson v. McCue, 42 Cal. [303], 310, 10 Am.Rep. 299. The law will not allow the land of one person to be taken by another, without any conveyance or consideration, upon slight presumptions or probabilities. Niles v. City of Los Angeles, 125 Cal. [572] 576, 58 P. 190. *The burden is upon the party who claims title by prescription to clearly prove by competent evidence all the elements essential to such title. The user must have been adverse to the true owner, and hostile to his title. It must have been actual, continued, open, and under a claim of right. It must have all the elements necessary to acquire title by adverse possession.* Thomas v. England, 71 Cal. [456] 459, 12 P. 491." (Emphasis supplied.)

■ Again, in the same case the court further said: "The defendant and his tenants were in the habit of passing over the unenclosed strip of land when going to or from their business. The question as to whether or not the use was under a claim of right, or a mere matter of neighborly accommodation, was a question of fact to be determined by the court in the light of the relations of the parties, their conduct, the situation of the property, and all the surrounding circumstances. The court below saw the witnesses, heard them testify, and found the facts against the defendant. Defendant testified that he used the way and claimed the right to use it, but it does not appear that any such claim was ever made to plaintiff or to his grantor. *It is not sufficient that the claim of right exists only in the mind of the person claiming it. It must in some way be asserted in such manner that the owner may know of the claim.* The fact that the owner knew of the travel and occasional use of the property does not even raise a presumption that such use was hostile or under claim of right. If any party who is allowed by silent permission to pass over the lands of another, nothing being said as to any right being claimed, after five years, without showing

that he ever communicated such claim in any way to the owner, can thus gain title by prescription, it would be a blot upon the law. An owner could not allow his neighbor to pass and repass over a trail, upon his open, unenclosed land, without danger of having an adverse title successfully set up against him. If he had several neighbors who so used the land, several separate titles to rights of way might thus be acquired. The law will presume that the land belongs to the owner of the paper title, and that the use was by permission or silent acquiescence. If this presumption is overcome by evidence showing the use to have been hostile, and that the owner knew of such hostile claim and took no steps to protect his property for a period of five years, then the presumption changes." (Emphasis supplied.)

In connection with his right to the use of the roadway, plaintiff testified at the trial as follows:

"Q. But you never did say anything to Mr. Pauli nor to any member of the Steinfeld Company (predecessor in interest), nor claim a right-of-way through there; say 'That is my private right-of-way to get out to Oracle Road?' You never did that, did you? A. I never had any occasion to say that to them. I thought it was a public road.

"Q. You just used it as a public road along with the rest of the public? A. That is right.

 \* \* \* \* \* \*

"Q. When did you ever claim you had a private right-of-way across there, across Lot 1? A. I never did claim it. I just used it and had no reason to think it existed any other way.

"Q. The first time you claimed it you went to see Mr. LaRue? A. That is right. I had no other occasion.

"Q. That was in 1945, just before you filed this law suit? A. Yes, after he came in there. I don't know what date it was."

From his testimony, it will be noted that plaintiff used the way and claimed a right to use it but it does not appear that any such claim was ever made to the defendant or to his grantor prior to the building of the fence.

Also, it is not clear from the evidence adduced by the plaintiff that the predecessors in interest of the defendant, or the latter, ever knew or supposed that the use of the strip of land in dispute was being used under a claim of right or in hostility to their title. This proposition is supported by the admission of plaintiff that, on an occasion about six years prior to the date of the trial, he undertook to secure from Fred Pauli, vice-president of the Arizona Building Company, a deed of conveyance to the lot embracing the roadway; however, the offer to purchase was refused by the owner.

Permissive use is further established by the testimony of plaintiff's witness, Wil-

liam C. Puelli, on cross-examination wherein he testified:

"Q. Did Mr. Pauli tell you that there was no public street through there? He told you there was no public street through there, didn't he? A. That is right.

"Q. And he told you that the Steinfeld people, and he was the vice president of the Steinfeld Company and one of the officers of the Arizona Building Company, had permitted the public to use that as long as they wanted to? Didn't he tell you that? A. Yes sir.

\* \* \* \* \* \*

"Q. Didn't he further tell you that as long as it was unused territory—I mean unfenced territory and he had no use for the property he didn't care whether people went across there or not, and he permitted them to use that as a roadway, isn't that right? A. Yes."

 It is a recognized rule of law that where the use of a private way by a neighbor is by the express or implied permission of the owner, the continued use is not adverse and cannot ripen into a prescriptive right. Pacific Gas & Elec. Co. v. Crockett, etc., Co., 70 Cal.App. 283, 233 P. 370; May Bernard, 40 Cal.App. 364, 180 P. 827; Irvin v. Petitfils, 44 Cal.App.2d 496, 112 P.2d 688. The law raises no presumption that the use is under a claim of right. 28 C.J.S., Easements, § 18(i); Boullioun v. Constantine, 186 Ark. 625, 54 S.W. 2d 986; Schudel v. Hertz, 125 Cal.App. 564, 13 P.2d 1008, 1186.

Under a heading, "Way by prescription when use is permissive only", it is said in 2 Thompson on Real Property (Perm.Ed.) sec. 521: "The modern tendency is to restrict the right of one to acquire a prescriptive right of way whereby another, through a mere neighborly act, may be deprived of his property by its becoming vested in the one whom he favored. \* \* \*"

 It is said in Howard v. Wright, 38 Nev. 25, 143 P. 1184, 1188:

"A right of way by prescription can only be acquired by a user which is neither expressly nor impliedly licensed or permissive. It must be adverse and hostile to the owner of the servient estate, and must be under a claim of right so expressed as to charge the owner of the servient estate with knowledge thereof.

\* \* \* \* \* \*

"Nothing less than an adverse user, under claim of legal right, will perfect an easement by occupancy for the statutory time. A use acquired merely by consent, permission, or indulgence of the owner of the servient estate, can never ripen into a prescriptive right, unless the user of the dominant estate expressly abandons and denies his right under license or permission, and openly declares his right to be adverse to the owner of the servient estate. Hurt v. Adams, 86 Mo.App. 73.

\* \* \* \* \* \*

*"The rule that precludes a permissive use from ripening into a right to continued enjoyment, where the permission, consent, or*

*license is expressly given is no less effective where the permission or license may be implied.* Thomas v. England, 71 Cal. 456, 12 P. 491." (Emphasis supplied.)

■ The evidence presented in the case at bar conclusively shows that the plaintiff, together with the general public, had enjoyed implied permissive use of the roadway through the neighborly indulgence of its owner and his predecessors in interest. And, a use that has its inception in the permission of the owner will continue as such until a distinct and positive assertion of a right hostile to the owner is brought home to him by words or acts. Omodt v. Chicago, M. & St. P. Ry. Co., 106 Minn. 205, 118 N.W. 798; Clarke v. Clarke, 133 Cal. 667, 66 P. 10; Howard v. Wright, 38 Nev. 25, 143 P. 1184; Brandon v. Umpqua Lbr. & Timber Co., 26 Cal.App. 96, 146 P. 46; Scheller v. Pierce County, 55 Wash. 298, 104 P. 277; Pitzman v. Boyce, 111 Mo. 387, 19 S.W. 1104, 33 Am.St.Rep. 536; Smith v. Oliver, 189 Ky. 214, 224 S.W. 683; Smith v. Fairfax, 180 Ky. 12, 201 S.W. 454; Flagg v. Phillips, 201 Mass. 216, 87 N.E. 598; Holm v. Davis, 41 Utah 200, 125 P. 403, 44 L.R.A.,N.S., 89; Naporra v. Weckwerth, 178 Minn. 203, 226 N.W. 569, 65 A.L.R. 124; Johnson v. Olson, 189 Minn. 183, 248 N.W. 700; Reider v. Orme, 17 Tenn.App. 497, 68 S.W.2d 960.

The plaintiff contends that the judgment of the lower court is sustained by the decision handed down by this court in the case of Gusheroski v. Lewis, 64 Ariz. 192, 167 P.2d 390. A factual analysis of this case clearly indicates that there was hostile and adverse use of the land for the statutory period as appellees had gone upon the lands of appellants and committed many acts inimical to the asserted claim of exclusive possession and domination; i.e., they had been cultivating, using and enjoying the lands continuously, openly, notoriously and without interruption.

■ Further, plaintiff places a strong reliance on the general rule of law pertaining to easements as set forth in the case of Glantz v. Gabel, 66 Mont. 134, 212 P. 858, 860: "Where the claimant has shown an open, visible, continuous, and unmolested use of the land of another for the period of time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right, and not by license of the owner. In order to overcome this presumption, thereby saving his title from the incumbrance of an easement, the burden is upon the owner to show that the use was permissive. This rule is sustained by the great weight of authority."

The court agrees with this rule of law in its entirety but questions its application to the facts in this matter. First, plaintiff, within six years prior to the filing of this action, attempted to purchase the property from the record owner, thereby recognizing his title. Second, the plaintiff's witness,

and one of the users of this roadway, testified that the former owner of the land in question had given him express permission to use the roadway previous to the erection of the fence, and third, the plaintiff testified the former owner knew he was using the road as he stated: "* * * He (owner) used it himself. Everybody else did. * * *"

■ A prescriptive right may be acquired, although the use was originally permissive, if in fact it became adverse. But the adverse user must be for the full ten years which excludes the time under which the use was permissive. 2 Thompson on Real Property, par. 522.

Adverse and hostile use must continue for ten years in this state before it ripens into a prescriptive right. Sec. 29-103, A.C.A.1939; Gusheroski v. Lewis, supra.

■ Plaintiff's adverse use of the roadway in having it repaired one time is presumed to have been accomplished within the ten year limitation period as the proof does not show otherwise. The incident in having the sidewalk depressed was clearly fixed within the period of limitation. Neither act would legally establish an adverse use.

■ It is well settled in this jurisdiction that in a case tried as here without the aid of a jury the trial and not the appellate court is the judge of the weight of the evidence, Ruth v. Rhodes, Ariz., 185 P.2d 304, and we would not disturb the judgment if there was involved merely a disputed fact issue. Hein v. Nutt, Ariz., 184 P.2d 656. But where, as here, there is no substantial evidence to support the necessary findings of fact upon which the judgment rests, the latter must be set aside. City of Phoenix v. Anderson, Ariz., 180 P.2d 219. The evidence in this case taken in the light most favorable to the plaintiff merely shows a permissive rather than an adverse use of the land in question. No prescriptive right having been established as there was no adverse use for the statutory ten year period, the judgment is reversed and the plaintiff's complaint ordered dismissed.

LaPRADE and LEVI S. UDALL, JJ., concur.

Chief Justice R. C. STANFORD having disqualified himself, Honorable DON T. UDALL, Judge, Superior Court, Navajo County, was called to sit in his stead.