248 P.2d 859

**BANK OF ARIZONA v. HARRING-TON et al.**

No. 5576.

Supreme Court of Arizona.

Oct. 10, 1952.

Rehearing Denied Nov. 19, 1952.

298

Morgan & Locklear, of Prescott, for appellant.

Crawford & Baker, of Prescott, for appellees.

STANFORD, Justice.

This is an appeal from a judgment of the Superior Court of Yavapai County. Homer

R. Wood, hereinafter referred to as appellant, brought suit against James E. Harrington and F. H. Lyons, hereinafter referred to as appellees, to obtain a declaratory judgment that the apellee's interests in the mining claims involved in the suit are subject to the lien of an agreement in the nature of a purchase-money mortgage which the appellant made with the appellees' predecessors in title. The lower court held that no lien existed in favor of appellant as against the appellees.

Until March 4, 1938, appellant was the owner of an undivided one-half interest in five unpatented and eleven patented tungsten mining claims, known generally as the Black Pearl group. On that date appellant executed a warranty deed and a mining deed as grantor to three grantees, H. L. Williams, Joseph W. Walton, and W. W. Stephenson, conveying his undividéd one-half interest in the above mining property. The deeds were recorded on March 5, 1938 with the county recorder of Yavapai county, Arizona. Also on March 5, 1938, H. L. Williams, Joseph W. Walton, and W. W. Stephenson, as first parties, and the appellant, as second party, entered into an agreement whereby the appellant agreed to convey to Williams, Walton and Stephenson his half-interest in the Black Pearl claims for the sum of $40,000, to be paid by the purchasers to appellant either in cash or on a royalty basis. This contract allowed the purchasers twenty years within which to pay the full purchase price of $40,000. This agreement was recorded on October 26, 1943.

The U. S. Fidelity & Guaranty Company, a corporation, obtained a judgment against Williams on October 25, 1939 in Yavapai county, Arizona. A writ of execution on this judgment was issued on September 25, 1943, and a return made on the same date by the sheriff of Yavapai county, showing his levy of the writ of execution on the interest of Williams in the Black Pearl group of mining claims. An execution sale of the Black Pearl claims was held on the 15th of November, 1943 by the sheriff of Yavapai county on his levy of September 25, 1943, at which sale the appellee James E. Harrington became the purchaser of Williams' interest in the above-mentioned mining claims. On May 26, 1944, the sheriff of Yavapai county executed his deed conveying Williams' interest to the appellees.

October 6, 1943, an agreement was executed between W. W. Stephenson, as first party, and D. O. Roe, as second party, for the sale of Stephenson's interest in the Black Pearl claims to Roe. This agreement mentioned the agreement of March 5, 1938 between appellant and Williams, Walton and Stephenson. On October 12, 1943, a warranty deed and a mining deed were executed by W. W. Stephenson, as grantor, to D. O. Roe, as grantee, conveying Stephenson's interest in the Black Pearl claims to Roe. These deeds were acknowledged

the same date, and were recorded on October 16, 1943.

Also on October 12, 1943 a warranty deed and a mining deed were executed by D. O. Roe and wife as grantors to the appellees as grantees, conveying the interest of the Roes in the Black Pearl claims to the appellees. These were acknowledged on October 27, 1943, and recorded on November 19, 1943 in Yavapai county.

The question presented to this court for its determination is whether the agreement of March 5, 1938 between appellant and Williams, Walton and Stephenson has any effect upon the interests acquired by appellees in the Black Pearl claims?

The lower court found from the evidence presented by both parties to this action that the appellant had failed to give notice to the appellees of his interest in the mining claims, and was guilty of laches in failing to record his agreement of March 5, 1938 until October 26, 1943.

There was considerable conflicting testimony in the lower court concerning whether appellees had actual notice of the agreement between appellant and Williams, Walton and Stephenson. It is well settled in this jurisdiction that this court will not weigh the evidence which was presented in the trial court to determine the correctness of its judgment. We will only examine the record before us to determine whether there is any substantial evidence to support same. Upon close examination of the evidence before us, both oral and documentary, we are of the opinion that the trial court was correct in holding that appellant had failed to establish that the appellees had actual notice of the agreement of March 5, 1938 when they acquired their interests in the Black Pearl claims.

We will now consider the contention of the appellant that appellees had constructive notice of the agreement by reason of its being recorded prior to the sheriff's sale. This proposition has been discussed in 33 C.J.S., Executions, § 294(d):

"Under some of the registry statutes giving a judgment lien priority as against any unrecorded instrument of which the judgment creditor had no knowledge at the time the judgment lien attached, an execution purchaser acquires a title superior to, and unaffected by, a deed or mortgage which is unrecorded at the time the judgment lien attached and of which the judgment creditor then had no notice, even though the execution purchaser before or at the sale acquires actual notice of the instrument, or constructive notice by virtue of its recording before sale. This is on the principle that, where the creditor's right has vested and he is entitled to priority over the unrecorded conveyance, the purchaser at the sale will be similarly entitled, since otherwise the creditor would be deprived of the advantage acquired. The rule has been applied to equities of which the judgment creditor had no

notice at the time his lien attached and of which the purchaser had notice at the time of sale, so as to protect the latter as a bona fide purchaser; * * * ." (Citing cases.)

In the present action there is no question but that the U. S. Fidelity & Guaranty Company acquired its judgment lien without knowledge of appellant's unrecorded mortgage. Section 71-423, A.C.A. 1939, provides that unrecorded instruments are void as against purchasers and creditors. It thus appears that the judgment lien has priority over the agreement of March 5, 1938.

Texas has a statute which is similar to our statute, section 71-423, supra, which provides that an unrecorded deed of conveyance to land "shall be void as to all creditors and subsequent purchasers * * * without notice." In Bova v. Wyatt, Tex.Civ.App., 140 S.W.2d 601, 602, the Texas court said:

"* * * It is the settled law in this state that a judgment creditor who has fixed a lien upon real estate by judicial process and who has had an abstract of his judgment duly recorded in the judgment records and in the indexes thereto in the county in which said real estate is situated is a creditor within the meaning of said Article 6627. * * *

* * * * * *

"Further, the notice given by Mrs. Bova to the sheriff of Walker County did not affect the rights of the purchasers at said execution sale and was ineffective since both said abstract and execution liens were acquired prior to the date of the giving of such notice."

This court has had opportunity to rule on similar facts in the case of Cashman v. Lewis, 26 Ariz. 95, 222 P. 411. In that case a conditional sale was not recorded. Lewis, a creditor, levied attachment on the property. Cashman, owner, made a bond to get his property and the issue was tried. There never was any execution sale. Lewis, by the very suit of course was notified of Cashman's ownership under the previous conditional sale. But this court held that as Lewis had no notice at the time of levy of attachment, that lien prevailed.

The appellant cites as support of his contentions the case of Luke v. Smith, 13 Ariz. 155, 108 P. 494. We believe that this case does not in any way help the appellant's case. In that case the plaintiff, Smith, was the partner of the defendant, Rainey. Smith advanced a sum of money with which the partnership acquired certain realty, an undivided two-thirds in the name of Smith and an undivided one-third in the name of Rainey. The defendants, Luke, were creditors of Rainey, and obtained a judgment against Rainey. Thereafter, the realty was sold under a sheriff's sale to the Lukes. In a separate action, Smith v. Rainey, 9 Ariz. 362, 83 P. 463, Id., 209 U.S. 53, 28 S.Ct. 474, 52 L.Ed. 679, the U. S. Supreme Court held that the agree-

ment between Smith and Rainey constituted them partners, and gave to Smith a partner's lien upon the land. This court held that the Lukes purchased the realty at the sheriff's sale with notice of the equitable lien held by Smith, and therefore, took subject to that lien. This court had this to say about our statute, section 71–423, supra:

"Counsel agree that the statute was adopted from the laws of Texas by the Legislature of this territory. The Supreme Court of that state, while uniformly holding that a prior unrecorded conveyance or mortgage creates no rights as against creditors who have obtained liens, had, prior to our adoption of the statute, construed it as not affecting resulting trusts or equitable liens evidence of which is not required or permitted to be recorded. * * " [13 Ariz. 155, 108 P. 495.]

The appellant does not contend, nor could he in this jurisdiction contend, that he holds a vendor's lien against the mining claims involved herein.

The agreement between appellant and Williams, Walton and Stephenson was in the form of a purchase-money mortgage, and as such, it was necessary that it be recorded as required under section 71–423, supra, if it was to be given any effect as against subsequent liens properly recorded.

We will now consider appellant's contention that the appellees acquired the Stephenson interest with constructive notice of the lien arising out of the agreement of March 5, 1938. Appellant contends that although the warranty and mining deeds from D. O. Roe and wife to the appellees were executed on October 12, 1943, they were not acknowledged until October 27, 1943, and not recorded until November 19, 1943, and therefore the appellees had constructive notice of the appellant's lien prior to the time that they received a valid and legally operative deed from Roe. In support of this contention, appellant relies upon Lewis v. Herrera, 10 Ariz. 74, 85 P. 245, and on section 71–405, A.C.A.1939, which provides:

"Every deed or conveyance of real property must be signed by the grantor and must be duly acknowledged before some officer authorized to take acknowledgments."

The foregoing section has been definitely construed in our case of Lewis v. Herrera, supra. Here a grantor made two deeds giving his property to his wife, in consideration of love and affection, but before they were both acknowledged the grantor became indebted to a bank which obtained judgment on the obligation and then sued to set aside the deeds and levy execution on the property. The court held that under the above statute, no deed will operate to convey title or be effective as a conveyance of real estate until duly acknowledged, and therefore the bank's rights were prior to those of the grantee. The grantor's deeds

were held to be void until given life by their acknowledgment. This decision was upheld by the United States Supreme Court in 208 U.S. 309, 28 S.Ct. 412, 52 L.Ed. 506.

Appellant also relies upon section 71–426, A.C.A.1939, which provides:

"The record of any grant, deed or instrument of writing authorized or required to be recorded, which has been duly acknowledged and recorded in the proper county, shall be taken and held as notice to all persons of the existence of such grant, deed or instrument. * * * "

We have two sections in the Arizona Statutes providing that instruments affecting real property must be recorded in order to be valid against subsequent purchasers for valuable consideration: 71–414, and 71–423, A.C.A.1939. The latter section specifically states that a mortgage is void as to subsequent purchasers for valuable consideration without notice unless such mortgage is properly acknowledged and recorded as required by law. Looking at the evidence in a light most favorable to the appellees, we find that they purchased the Stephenson interest without actual notice of appellant's unrecorded mortgage and for valuable consideration. We have found no case in which this court has passed on this point before, but we have found that similar situations have been passed upon by numerous other states. The cases involving the present set of facts are to be found in Randall v. Hamilton, 156 Ga. 661, 119 S.E. 595, 32 A.L.R. 344.

We find that states having statutes similar to our statutes, 71–414, 71–423, supra, have held in similar fact situations that the subsequent purchaser (Harrington and Roe) will prevail, even though the prior mortgage was recorded before the recording of the subsequent conveyance (deed to Harrington and Roe), but after the execution of the said subsequent conveyance. We quote from 32 A.L.R. 348:

"Under a statute in Missouri relating to the recording of conveyances and providing that no such instrument 'shall be valid except between the parties thereto and such as have actual notice thereof, until the same shall be deposited with the recorder,' it was held that as between two unrecorded conveyances, the junior grantee, if a bona fide purchaser, was entitled to priority under the Missouri statute, and that it was immaterial that after his purchase the prior conveyance was first recorded. Miller v. Merine, [C. C.] 1890, 43 F. 261.

\* \* \* \* \* \*

"In Brown v. Nelms, 1908, 86 Ark. 368, 112 S.W. 373, the court, however held that where a mortgage was not recorded until after a deed of the same premises had been executed, the deed took precedence over the mortgage, although the latter was first executed.

\* \* \* \* \* \*

" \* \* \* 'Recordation is required for the protection of subsequent purchasers only. To require a subsequent

conveyance of title to be recorded in order that a prior purchaser of the same property may be able to obtain information of its existence would not be in furtherance of the general design of these statutes, which was to protect purchasers from being undone by prior secret conveyances by making the means of obtaining information thereof available to that end. And so it is not necessary to his full protection in the absence of statutory provisions so requiring, that the subsequent purchaser record the instrument under which he claims before the recordation of the conveyance of the prior purchaser.' "

We hold that the better-reasoned cases, and what appears to be the majority rule, grant priority to the subsequent purchaser under similar circumstances, and where the court is construing a statute similar to ours.

The judgment of the lower court is affirmed.

UDALL, C. J., and PHELPS, DE CONCINI, and LA PRADE, JJ., concurring.