713 P.2d 1258

James H. WHITTEMORE and Laura R. Whittemore, husband and wife, and James K. Whittemore, a single man, Plaintiffs-Appellees,

v.

Eugene AMATOR and Betty Amator, husband and wife, Defendants-Appellants.

No. 1 CA–CIV 7639.

Court of Appeals of Arizona, Division 1, Department D.

May 9, 1985.

Smitherman, Hubert & Sacks by William C. Smitherman, Tucson, and Kenneth A. Haber, Springerville, for plaintiffs-appellees.

Platt & Hall, P.C. by Mitchel D. Platt, St. Johns, for defendants-appellants.

## OPINION

CORCORAN, Judge.

The appellants Amator dispute whether the appellees Whittemore adequately

proved that they had acquired a strip of property of approximately one acre in area by adverse possession.

The Amators purchased a 40-acre parcel of property in about January, 1981, located near Springerville. The Whittemores held title to the property immediately to the north through a deed executed in July, 1973, and recorded in August, 1976. They purchased their property from members of the Coleman family who had owned the property for many years previously. The Whittemore property was enclosed on all sides by fencing.

When the Amators had a survey made in October, 1980, before their purchase of the property, it was discovered that the fence separating their property from the Whittemore property was not situated on the boundary line between the two parcels of property. Instead, it was positioned approximately 60 feet inside the Amators' property. The fence was 4-strands of barbed wire on cedar posts. A dispute arose between the parties as to ownership of the strip of property between the fence and the true boundary line existing pursuant to the deeds. The Amators tore down the fence and attempted to have power lines brought in on the strip of property. The Whittemores prevented placement of electric poles on the property and filed suit in March, 1982, to quiet title in the property by adverse possession. The Amators counterclaimed for quiet title in them as the record owners.

The Whittemores claim title to the property pursuant to A.R.S. § 12–526(A) which provides a ten-year limitation period for establishing title to property by peaceable and adverse possession. Since the Whittemores themselves had not possessed the land for the requisite ten-year period, their claim depended on being able to tack their years of possession to those of their grantors, the Colemans. A.R.S. § 12–521(B) provides that " '[p]eaceable and adverse possession' need not be continued in the same person, but when held by different persons successively there must be a privity of estate between them." The Whittemores'

claim to adverse possession rested on the belief of the Whittemores and the Colemans before them that they owned all of the property enclosed by the fence around the property, their use of the enclosed property for grazing, and their maintenance of the fence.

After trial to the court, the trial court found that the Whittemores had established their claim of adverse possession and awarded judgment quieting title in them. The Amators appeal, arguing that the Whittemores did not present sufficient evidence to establish various elements necessary in proving peaceable and adverse possession.

Additionally, the Amators argue that testimony of only one of the Whittemores' grantors concerning possession of the property where several persons had jointly owned the property is insufficient to allow tacking of the Whittemores' period of possession to that of the prior owner. The Amators have cited no authority for this proposition, and we find no merit to their contention that all joint owners must claim adverse use in order to take title from a third party. The possession of one cotenant is presumptively the possession of all and inures to the benefit of all. *Big Run Coal & Clay Co. v. Helton,* 323 S.W.2d 855 (Ky.1959). The Whittemores, as grantees of the Colemans, clearly were in privity with the Colemans and were entitled to tack their period of possession of the disputed property to the period of possession of the Colemans in order to establish a continuous possession for the statutory period.

### Sufficiency of the Evidence

We now proceed to the question of the sufficiency of the evidence which was presented to prove the elements of peaceable and adverse possession. A reviewing court does not weigh the evidence, *Bank of Arizona v. Harrington,* 74 Ariz. 297, 248 P.2d 859 (1952), but examines it to see if it is legally sufficient. *Walters' Estate,* 77 Ariz. 122, 267 P.2d 896 (1954). If there were conflicts in the evidence, such con-

flicts would have to be resolved in favor of upholding the judgment. *Bade v. Drachman*, 4 Ariz.App. 55, 417 P.2d 689 (1966). In this case, however, the Amators do not dispute any of the evidence presented by the Whittemores. They merely argue that the evidence that was presented is not legally sufficient to establish adverse possession. We agree, and reverse.

A.R.S. § 12–521(A)(1) defines "adverse possession" as "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." "Peaceable possession" is defined in subsection (2) as "possession which is continuous, and not interrupted by an adverse action to recover the estate." This court stated in *Rorebeck v. Criste*, 1 Ariz.App. 1, 3–4, 398 P.2d 678, 680–681 (1965):

> Our statutes follow the generally held rule that in order for one to acquire title purely by adverse possession, such possession must be actual, open and notorious, hostile, under a claim of right, continuous for the statutory period (here ten years), and exclusive. It is generally conceded that all of these elements must coincide before one may acquire title by adverse possession.

The Amators argue that the evidence fails to show that the Whittemores and the Colemans made any use of the property, much less an adequate use that would show an open and hostile claim to the property. They also argue that the evidence was inadequate to show continuous possession for the statutory period of time.

The evidence that the Whittemores presented to prove that they and the Colemans before them had maintained peaceable and adverse possession of the strip of property for the statutory period consisted of the following. The Whittemores established that the fence had been positioned inside the Amators' property line for more than ten years by presenting an Arizona Highway Department map dated 1957 which showed a fence located in the same place that the fence torn down by the Amators had been located. Mrs. Ethel L. Cole-

man, one of the Whittemores' grantors, testified that she and her husband's family had owned the land they sold to the Whittemores for about 40 years, that during that time the fence had been located in that same position, and that she and her husband had claimed ownership up to and including the fence. She further testified that they had used their property for grazing cows and sometimes horses for "a couple months ... early in the spring" and had maintained the fence. Mrs. Whittemore testified that after their purchase from the Colemans, they had leased the property for grazing livestock and had their lessees maintain the fence. She testified that the Whittemores had purchased the property, believing that the fence was the boundary of their property. Mr. Whittemore testified that they were not paid money by people who "leased" the property. When asked if he could see the "use" of the property, Mr. Whittemore testified variously that "there wasn't any visual use of the property other than pasture"; "[i]t didn't look like it had been used for a number of years"; "I couldn't say how long it hadn't been used"; it hadn't been used for "maybe ten" years, or a "couple years." The record does not reflect that, aside from the fence, any improvements had been placed on the property in question.

The Amators argue that the testimony concerning the use of the property for grazing was not definite enough to prove possession of the specific strip of property in question or continuous possession for the ten-year statutory period. We agree. While Mrs. Coleman testified that she and her family had grazed cows for a couple of months in the spring during her 40 years of ownership, she gave no indication of the number of years or the specific years that they had done so, and gave no indication of the number of cows involved at any time. Therefore no showing was made that possession had been maintained for the requisite ten-year period. While the testimony indicates that the property, in general, owned by the Whittemores and the Colemans before them, had been used

for grazing, there was no testimony that the property had been grazed up to the fence line or even that the strip of property along the fence contained vegetation upon which animals would be expected to graze. There is a striking lack of specificity in the evidence presented.

The burden of proof in a suit for adverse possession is upon the person claiming title by adverse possession to show that the requisite elements thereof have been satisfied. There are no equities favoring the establishment of an adverse possession claim. *Tenney v. Luplow*, 103 Ariz. 363, 442 P.2d 107 (1968); *Combs v. DuBois*, 135 Ariz. 465, 662 P.2d 140 (App.1982).

■ In weighing the claimant's evidence, courts in other jurisdictions have adopted the more stringent "clear and convincing" standard of proof. *See Curran v. Mount*, 657 P.2d 389, 391 (Alaska 1982); 2A C.J.S. *Adverse Possession* § 293 (1972). Our Supreme Court stated that the "evidence ... must be clear and positive," *Lewis v. Farrah*, 65 Ariz. 320, 323, 180 P.2d 578, 580 (1947), which is an analogous standard. This means that all the evidence, when weighed against the presumptions favoring the titleholder of record, must show affirmatively as to the very land in question that the claimant had peaceable and adverse possession. *Fritts v. Ericson*, 87 Ariz. 227, 349 P.2d 1107 (1960).

The Whittemores argue that the grazing of cattle within an enclosed area is proof of adverse possession in Arizona. As support for this position, they cite *Spillsbury v. School District*, 37 Ariz. 43, 228 P. 1027 (1930) which states that whether an act is sufficient to constitute adverse possession depends upon the particular circumstances of each case. They also cite *England v. Hing*, 105 Ariz. 65, 459 P.2d 498 (1969) which holds that the grazing of cattle on open range, "without substantial inclosures or other permanent improvements," is not proof of adverse possession, and argue that the grazing of cattle on enclosed land is evidence of adverse possession. It is unnecessary for us to consider this question since the Whittemores did not meet their burden of proof that the strip of land in question was grazed for the requisite ten-year period.

■ Since the Whittemores did not sufficiently establish that the land in question had been grazed for the statutory period of time, the only way that the judgment for the Whittemores can be upheld in this case is by a finding that the existence of the fence itself and the belief of the Whittemores and the Colemans that they owned the property up to the fence line is independently sufficient to prove adverse possession. Clearly, the subjective beliefs of the Whittemores or the Colemans added nothing to their case. It is well established in Arizona that it is insufficient for a claim of right to exist only in the mind of the person claiming it. The claim must be asserted in such a manner that the owner may know of the claim. *Cf. LaRue v. Kosich*, 66 Ariz. 299, 187 P.2d 642 (1947); *Gospel Echos Chapel v. Wadsworth*, 19 Ariz.App. 382, 507 P.2d 994 (1973).

■ In *Knapp v. Wise*, 122 Ariz. 327, 594 P.2d 1023 (App.1979), Division Two of this court stated that the enclosure of land is evidence of possession and, either in itself or in connection with other acts of ownership, may be a sufficient basis for an adverse possession claim. While there are numerous cases in Arizona in which the existence of a fence played some role in the establishment of a claim of adverse possession, we find none in which it is clearly shown that the existence of a fence with no other acts of possession was the sole basis for the establishment of adverse possession. While there may be circumstances in which a fence by itself would establish adverse possession, we do not find it to be presented under the facts of this case. But *see Hartley v. Ruybal*, 160 Colo. 80, 414 P.2d 114 (1966). The act of enclosing land within a fence would be stronger evidence of intent to possess the land than merely claiming land that had previously been fenced by an unknown party for unknown purposes. In this case, the record does not show that the Whittemores or their predecessors in interest fenced the property. It

is apparently unknown who put up the fence or for what purpose. Mrs. Amator testified that it could have been the fence of her predecessor in interest. As the Texas Supreme Court said in *Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 267 S.W.2d 781, 786 (1954) in distinguishing between lands designedly enclosed from those casually enclosed:

> Where the character of use of inclosed land, by a claimant of adverse possession, is not such as to constitute, of itself, an actual and visible appropriation of the land, it may be safely said that such use cannot be aided by a fence which casually created the inclosure, and to the construction of which fence neither the claimant of adverse possession nor any person under whom he claims has contributed.

Quoting *West Production Co. v. Kahanek*, 132 Tex. 153, 158, 121 S.W.2d 328, 331 (1938). We also note that although there is evidence that the Whittemores' lessees and the Colemans maintained the fence, there is no evidence concerning the extent of the maintenance performed on the fence. We hold under the circumstances that the mere existence of the fence and the belief of the Whittemores and the Colemans that the fence was the proper boundary line was not sufficient to prove adverse possession.

The judgment of the trial court is reversed including the award of attorney's fees, and the case is remanded to the trial court with the direction to quiet title in the Amators. Their request for attorney's fees for the trial court proceedings pursuant to A.R.S. § 12–1103 is granted with the amount of attorney's fees to be decided by the trial court.

*Attorney's Fees on Appeal*

The Amators also request attorney's fees on appeal. In *Chantler v. Wood*, 6 Ariz. App. 325, 432 P.2d 469 (1967) this court held that attorney's fees cannot be awarded on appeal under the authority of A.R.S. § 12–1103. The *Chantler* court reasoned that because the statute in question was contained within a chapter heading that related exclusively to remedies available in the trial court, it could not authorize attorney's fees on appeal.

Decisions of coordinate courts are highly persuasive and binding except where based upon clearly erroneous principles or changed conditions. *Scappaticci v. Southwest Sav. & Loan Ass'n*, 135 Ariz. 456, 662 P.2d 131 (1983); *Pena v. Industrial Comm'n*, 140 Ariz. 510, 683 P.2d 309 (App.1984). We believe the reasoning in *Chantler* has been undercut by our Supreme Court's subsequent interpretation of another attorney's fees statute. In *Wenk v. Horizon Moving & Storage Co.*, 131 Ariz. 131, 639 P.2d 321 (1982), the Arizona Supreme Court determined that A.R.S. § 12–341.01 [1] applies to appeals as well as trials even though the statute is silent as to post-trial proceedings. The court found that the same policies apply on appeal as at trial, specifically that the matter is not settled until the appeal process is concluded. So, too, A.R.S. § 12–1103(B) encourages the defendant to abandon doubtful claims on real property so as to remove clouds on the title and avert the necessity for litigation. We see no reason why, in a quiet title action, a party with a weak case should be discouraged from defending at trial because of the threat of having attorney's fees assessed against him, but be free of that threat on appeal. Accordingly, we hold that A.R.S. § 12–1103(B) does apply on appeal and therefore we award attorney's fees to appellants Amator pursuant to rule 21, Arizona Rules of Civil Appellate Procedure.

Reversed and remanded with directions.

MEYERSON and CONTRERAS, JJ., Concur.

---

**1.** The relevant portion provides that "the court may award the successful party [in a contract action] reasonable attorney's fees."