UNITED STATES on Behalf of the ZUNI TRIBE OF NEW MEXICO, et al., Plaintiff, Counter-defendants,

v.

Earl PLATT, et al., Defendants/Counter-claimants.

Civ. No. 85–1478 PCT–EHC.

United States District Court, D. Arizona, Phoenix Division.

Feb. 8, 1990.

Hank Meshorer, Stephen G. Boyden, for plaintiff.

Warren E. Platt, Mitchell D. Platt, Patrick Xavier Fowler, for defendants.

## ORDER

CARROLL, District Judge.

The Zuni Indians, as a part of their religion, make a regular periodic pilgrimage at the time of the summer solstice, on foot or horseback, from their reservation in northwest New Mexico to the mountain area the tribe calls Kohlu/wala:wa which is located in northeast Arizona. It is believed by the Zuni Indians that Kohlu/wala:wa is their place of origin, the basis for their religious life, and the home of their dead.[1]

There is historical evidence that the Zuni pilgrimage was occurring as early as 1540 A.D.. Hammond, George P. and Agaptito Rey *Narratives of the Coronado Expedition 1540–1542*, The University of New Mexico Press; Albuquerque; 1940.

The pilgrimage has been largely uncontested until recent times.

In 1985 defendant, Earl Platt, declared his intention of preventing the Zuni Indians from crossing his land on their pilgrimage. Earl Platt and the estate of Buena Platt (defendant), own or lease from the United States or the state of Arizona land in Apache County over which the Zuni Indians cross on their pilgrimage to Kohlu/wala:wa. On June 12, 1985 the United States on behalf of the Zuni Tribe instituted this action claiming a prescriptive easement by adverse possession across the Platt land.

The United States also sought a temporary restraining order, which was granted by Judge Copple on June 12, 1985, restraining the defendant from interfering with the Zuni pilgrimage.[2]

On March 3, 1988 the Zuni Tribe was allowed to intervene as plaintiff. The intervenor's complaint, like the original complaint, alleged a right to prescriptive easement but it also bases the Zuni Indians' claim of right-of-way across the land in question on "rights to protection of its property and its free exercise of religion under the treaty of Guadalupe Hidalgo and upon Public Law 98–408 (98 Stat.1533)". The issues of whether under international or federal constitutional law the Zuni Tribe have rights to the land crossed on their religious pilgrimage were severed, for purposes of this trial, from the issue of prescriptive rights.

---

1. These lands were lost to the Zuni Tribe as a result of an executive order in 1877, however, 1984 legislation, Public Law 98–408 § 4 (98 Stat. 1533), allowed the Tribe to acquire lands in Arizona for religious purposes. The legislation also allowed the Zuni Indians to acquire a permanent right of ingress and egress to Kohlu/wala:wa for traditional religious pilgrimages and ceremonies. As a part of the purchase of Kohlu/wala:wa, from Seven Springs Ranch Inc. the Zuni Tribe was granted a right of ingress and egress to the mountain connecting with an existing roadway from Hunt, Arizona. Exhibit 430, paragraph 6(d). This point of access is on the west side of the mountain and would not enable the pilgrimage to have access to the area in the traditional manner.

2. Another Temporary Restraining Order was entered on June 12, 1989 to restrain the defendant from interfering with the pilgrimage which was to take place on June 21–24, 1989.

The Plaintiffs' claim for a prescriptive easement across the defendant's land was heard at trial on January 3–5, 1990.

FINDINGS OF FACT

The evidence presented at trial shows that the Zuni Indians have gone on their quadrennial pilgrimage, approximately every four years [3] since, at least, the early twentieth century. There was direct evidence presented at trial, in the form of motion picture documentation, of the pilgrimage occurring in 1924. Exhibit 147 "Motion Pictures at Zuni," *Indian Notes.* Volume One, Number One, January, 1924, The Museum of the American Indian (Heye Foundation). Furthermore, John Niiha, the Zuni Dance priest, testified that he has been on 11 pilgrimages since his first in approximately 1949. Another Zuni religious leader, Mecalite Wytsallaci, the Zuni Rain Priest of the North for the last 39 years, who is ninety-nine years old, testified that he went on a pilgrimage when he was a young man but has not participated in the pilgrimage since he has been the Rain Priest. Wytsallaci's testimony, indicates that he participated in a pilgrimage sometime prior to 1940. Since 1976 the Apache County Sheriff's office has set up a road block, north of St. Johns, on Highway 666, at the request of the Zuni Tribe, so as ensure the safety and privacy of the pilgrims as they cross the highway going to and coming from Kohlu/wala:wa on their pilgrimage.

Eighty Tribe members are selected to participate in the pilgrimage. However, due to age, health and other considerations not all actually go along. The pilgrimage party generally consists of forty to sixty Zuni Indians and twenty to forty horses. The pilgrims walk or ride horses, vehicles are not allowed in the pilgrimage procession. The Zuni pilgrimage begins at the Zuni Reservation, in Northwestern New Mexico, and follows a fairly direct path to Kohlu/wala:wa in Apache County, Arizona. The pilgrimage generally crosses the defendant's land along the line of Township 15 North (T. # N.)—Range 28 East (R. # E.) sections 13, 24, 23, 22, 21, 28, 29, 30 continuing on to R.27E. sections 25, 36, 35, 34, 33, T.14 N. sections 4, 5, T.15 N. section 32 and back into T.14 N. section 5. At this point the pilgrimage splits. One religious clan of the Zuni pilgrims goes north from T.14 N.—R.27 E. section 5 to section 6 continuing through T.15 N.—R.27 E. section 31 and T.15 N.—R.26 E. section 36 then proceeding off the defendant's land. The other religious clan involved in the pilgrimage proceeds south from T.14 N.—R.27 E. section 5 to section 6 continuing through T.14 N.—R.26 E. sections 1, 12 & 13 then proceeding off Platt property.

The two religious groups meet at Kohlu/wala:wa and begin the journey back to the reservation. The return route re-enters the defendant's property at T.14 N.—R.27 E. section 9 goes through section 10, leaves and then re-enters Platt land at T.15 N.—R.27 E. section 36 continuing through R.28 E. sections 31, 32, 29 & 28 at which time the route of egress merges with the route of ingress to Kohlu/wala:wa.[4]

The total trek is 110 miles in length. It takes four days for the pilgrims to travel to Kohlu/wala:wa and return back to the reservation. The pilgrimage crosses approximately 18–20 miles of land owned or leased by the defendant Earl Platt.

The path or route used by the Zuni Indians, on their religious pilgrimage has been consistent and relatively unchanged.[5] The plaintiffs concede that topographical changes may necessarily alter the route. However, man made obstacles will not cause the Zuni pilgrims to deviate from their customary path. This is evidenced by the fact the pilgrims cut or take down fences in their way.

3. In 1985 the pilgrimage was conducted in the fifth year instead of the fourth, 1984, because, as the testimony indicates, the Zuni's did not want to jeopardize legislation pending in Congress whereby the Zuni Tribe could purchase Kohlu/wala:wa to be held in trust by the United States for the tribe.

4. The Route of the Zuni Pilgrimage is most accurately portrayed by exhibits 307.3 and 308.

5. Expert witness Dr. Hart testified that the BLM survey, exhibit 307.3, was the most accurate depiction of the Zuni pilgrimage route.

The pathway used by the pilgrims is approximately fifty feet wide.[6] The Zuni Indians use of the route in question is limited to a path or a place crossed enroute to Kohlu/wala:wa. Other than the path itself there are no points or landmarks of religious significance to the Zuni Indians on the defendant's land and the pilgrims do not camp on the defendant's land but they do stop for lunch on Platt land.[7]

The use of the property, by the Zuni Indians, along the pilgrimage route has been open visible and known to the community. Several witnesses who have been long time residents of the St. Johns area, which is in close proximity to the land in question, testified that they knew of the Zuni pilgrimage and that it was generally known throughout the community.

The Zuni Tribe, and the people going on the pilgrimage, believed that they had a right to cross the lands traversed by their established route. There has been no showing that they sought to cross lands under permission or by authority of other persons.

CONCLUSIONS OF LAW

The Arizona statute defining adverse possession provides:

"Adverse possession" means an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.

A.R.S. § 12–521. The Arizona statutes further provide that:

A. A person who has a cause of action for recovery of any lands, tenements or hereditaments from a person having peaceable and adverse possession thereof, cultivating, using and enjoying such property, shall commence an action therefor within ten years after the cause of action accrues, and not afterward.

A.R.S. § 12–526.

The Arizona statutes follow the generally held rule that in order for one to acquire right to property purely by adverse possession, such possession must be actual, open and notorious, hostile, under a claim of right, continuous for the statutory period of 10 years, and exclusive. *Whittemore v. Amator*, 148 Ariz. 200, 202, 713 P.2d 1258 (App.1985) *See also LaRue v. Kosich*, 66 Ariz. 299, 187 P.2d 642 (1947).

■ The Arizona Courts place the burden of proof on the party claiming the right to use another's land. *LaRue*, 66 Ariz. at 303, 187 P.2d 642. Once the prima facie elements of prescription are met, the law presumes the use to be under a claim of right and not permissive. *Gusheroski v. Lewis*, 64 Ariz. 192, 198, 167 P.2d 390 (1946). The burden of proving permissive use then falls upon the landowner. *Brown v. Ware*, 129 Ariz. 249, 251, 630 P.2d 545 (App.1981).

■ The proof necessary to establish a prescriptive easement to use land is not the same as that to establish a claim of title by adverse possession. *Etz v. Mamerow*, 72 Ariz 228, 232, 233 P.2d 442 (1951). "[I]t is only the use to which the premises are put which must be shown to be adverse, open and notorious. To the extent that the use is established, it, of course, is hostile to the title of the servient estate." *Id.* at 233, 233 P.2d 442. Therefore, although the plaintiffs in this case must prove all the elements essential to title by prescription,[8] their burden of proof must be measured in terms of the right to the use they claim, i.e. a very limited periodic use.

ELEMENTS ESTABLISHING AN EASEMENT

As stated above the plaintiffs must have proven, at trial, every element essential to adverse possession to establish a prescriptive easement over the pilgrimage route in question. Arizona case law does not provide a clear delineation as to the requirements of each element of adverse possession and often two or more requirements

6. Mr. Niiha stated that the pathway used by the Zuni pilgrims was about the width of the court room which is approximately 50 feet wide.

7. There are a number of sites with religious significance to the Zuni Indians along the pilgrimage route east of the defendant's land.

8. *LaRue*, 66 Ariz. at 303, 187 P.2d 642 (1947).

322

are analyzed in conjunction with each other.

█ The requirements of establishing actual possession and continuous possession are similar and inseparable and therefore they shall be considered together. Neither actual occupancy nor cultivation nor residence is necessary to constitute actual possession, and what acts may or may not constitute possession are necessarily varied and depend on the circumstances surrounding the case. *Spillsbury v. School District No. 19*, 37 Ariz. 43, 48, 288 P. 1027 (1930); *Higginbotham v. Kuehn*, 102 Ariz. 37, 38, 424 P.2d 165 (1967). Furthermore:

> Neither A.R.S. § 12–521, subsec. A(1) nor § 12–521, subsec. A(2) sets any specific time requirement for physical bodily presence which must be complied with in order for a claimant to claim the continuous possession required to perfect title by adverse possession. "Possession" as used in § 12–521, subsec. A is not synonymous with the physical bodily presence of the adverse claimant. Continuous bodily presence is not required.

*Kay v. Biggs*, 13 Ariz.App. 172, 175, 475 P.2d 1 (1970). In *Kay* the Arizona court of appeals held that two to three weeks of continuous possession during the summer every year coupled with other facts was sufficient to establish continuous possession and the adverse claim element required by statute. *Id.* at 176, 475 P.2d 1. It should be noted in *Kay* the plaintiff sought and received title to the disputed parcel of land by adverse possession, not merely an easement.

█ The Zuni tribe has had actual possession of the route used for the religious pilgrimage for a short period of time every four years. They have had actual possession of the land in the sense that they have not recognized any other claim to the land at the time of the pilgrimage, as evidenced by their lack of deviation from the established route and disregard for fences or any other man made obstacle that blocks their course of travel. This Court also finds that the Zuni Tribe continually used a portion of the defendant's land for a short period of time every four years at least

since 1924 and very probably for a period of time spanning many hundreds of years prior to that year.

Therefore, the plaintiffs have established the "actual" and "continuous" possession elements of their claim for adverse possession. Furthermore this "actual" possession has been continuous for over ten years which is required for a claim of a prescriptive right. *Whittemore*, 148 Ariz. at 202, 713 P.2d 1258 (App.1985).

The open and notorious element of adverse possession requires that the acts of ownership must be of the character so as to indicate to the community in which the land is situated that it is in the exclusive possession and enjoyment of the claimant. 2 C.J.S. Adverse Possession § 50 at 714 (1972). There must be physical facts which openly evince and give notice of an intent to hold the land in hostile dominion and indicate to a prudent owner that an adverse claim is being asserted. *Conwell v. Allen*, 21 Ariz.App. 383, 384–385, 519 P.2d 872 (1974). However, an owner's actual knowledge of the adverse possession is equivalent to, and disposes with the necessity of open and notorious possession. 2 C.J.S. Adverse Possession § 51 at 718 (1972). Furthermore, presumption of notice or fact of notice upon the part of the title owner would arise to bar his right. *Tenney v. Luplow*, 103 Ariz. 363, 367, 442 P.2d 107 (1968). Presumption of notice may arise when there is shown, under all facts and circumstances, a concurrence of the elements of adverse possession and the facts of use, possession and enjoyment indicating on the part of the claimant an intent to repudiate title and interest of the land owner. *Id.* at 368, 442 P.2d 107.

The Zuni Tribe has not attempted to hide their pilgrimage or the route they were taking, although they do regard it as a personal and private activity. It was known generally throughout the community that the Zuni Indians took a pilgrimage every few years. It was also common knowledge in the community, generally, what route or over which lands the pilgrimage took place. Mrs. Hinkson, a resident of the St. John's area since 1938 and an

owner of a ranch which the Zuni Indians cross on their pilgrimage, testified it was generally understood that the Zuni Tribe had set a precedent of crossing the land of ranchers that could not be changed even if owners of the land objected to such crossings or use of their property. The Zuni tribe also cut, tore down or placed gates in, fences on the property owned or leased by defendant and others.

This Court draws the reasonable inference, from all the facts and circumstances, that Earl Platt, the defendant in this case, was aware that a pilgrimage occurred, that it occurred approximately every four years and that the pilgrimage went across his property.[9]

Consequently, the Zuni Tribe's open and notorious use of Platt land and the inference that Earl Platt knew of such use satisfies and/or obviates the "open and notorious" element of an adverse possession.

It is contended by the plaintiffs that the Zuni's use of the Platt lands also fulfills the requirement of the "hostile" and "claim of right" elements of adverse possession. "Hostile" as applied to possession of realty does not connote ill will or evil intent, but merely a showing that the one in possession of the land claims exclusive rights thereto and denies by word or act the owner's title. *Leon v. Byus,* 115 Ariz. 451, 453, 565 P.2d 1312 (App.1977) citing *Tenney,* 103 Ariz. 363, 442 P.2d 107 (1968). Similarly a "claim of right" is:

> [N]othing more than the intention of the party in possession to appropriate and use the land as his own to the exclusion of others irrespective of any semblance or shadow of actual title or right.

*Tenney* 103 Ariz. at 366, 442 P.2d 107 (1968).

The record reflects, as discussed earlier, the Zuni pilgrims, at the time of their pilgrimage, claim exclusive right to the path they cross to Kohlu/wala:wa. The claim of right to temporary and periodic use of the defendant's land is evidenced by the cutting or pulling down of fences and the lack of deviation from the route. In recent years the Zuni Indians, with the aid of the Bureau of Land Management, placed gates in fences which impeded the pilgrimage route of the Zuni Indians.[10] The use, by the pilgrims, of the defendant's land is "hostile" to Earl Platt's title. Also there was no evidence presented at trial which would indicate that the Zuni tribe sought permission to cross the land of Earl Platt. The evidence clearly illustrated that the Zuni Indians never sought permission to cross lands on their pilgrimage but rather it was believed said crossing was a matter of right.

The record leaves no doubt that the "hostile" and "claim of right" elements of adverse possession has been satisfied by the plaintiffs.

Insofar as the exclusivity of possession is required, in the context of the claim asserted here, it is reasonable to conclude that if people are occupying a tract of land at a particular time, another person or other people, cannot simultaneously occupy the same space. Therefore, the Zuni's participating in the quadrennial pilgrimage have exclusive possession of the land upon which they cross enroute to Kohlu/wala:wa when they are crossing that land.

The Zuni Indian's use and possession of the Platt land has been actual, open and notorious, continuous and uninterrupted for at least 65 years and under a claim of right. Such use was known by the surrounding community.

It is clear from the record that the plaintiffs have established that the Zuni Indians meet the standards of adverse possession, set forth in A.R.S. § 12–521 and the applicable case law for purposes of the limited use sought. The Zuni Tribe is entitled to a prescriptive easement over the land of the defendant for the purposes of their quadrennial pilgrimage. The defendant presented no evidence and has not otherwise proven that the Zuni Indians' use of

---

**9.** The record shows that Earl Platt has owned or leased the property in question since the early 1940's.

**10.** This was done without the permission of the owners of the lands upon which these fences were located.

the land in question was permissive or otherwise.

SCOPE OF THE EASEMENT

Since the plaintiffs have established the Zuni Indians' right to a prescriptive easement this Court must determine the scope of that easement.

The scope of a prescriptive easement is determined by the use through which it is acquired. *Stamatis v. Johnson,* 71 Ariz. 134, 38, 224 P.2d 201 (1950). Those using the land of another for the prescriptive period may acquire the right to continue such use, but do not acquire the right to make other uses of it. *Id.*

The Governor of the Zuni Tribe, Robert E. Lewis, testified that his tribe did not use the path or route across the defendant's land for any other purpose than the quadrennial pilgrimage. The testimony presented at trial showed that the path used by the pilgrims was approximately 50 feet wide, not one mile, as asserted by the plaintiffs. Furthermore, there has been no evidence the Zuni pilgrims have built fires on the Platt ranch, nor has it been established that the pilgrims use water from the water sources or wells on the Platt property.

In reaching its decision, the Court does not base its ruling on any religious or 1st Amendment rights to the land in question.[11] The evidence of the religious purposes of the Zuni pilgrimage was admissable only to the extent it demonstrated when and how the land in question was used.

Applying the above stated law this Court can only grant an easement for the use of defendant's land to the extent the use claimed has been proven or established at trial. Accordingly,

IT IS ORDERED that the Zuni Tribe is granted an easement over the land owned by Earl Platt and the estate of Buena Platt, for 25 feet in either direction, of the route established by the October 27, 1987 Bureau of Land Management Survey, Exhibit 307.-3, for the purposes of ingress to and egress from Kohlu/wala:wa by no more than 60 persons on foot or horseback.

IT IS FURTHER ORDERED that the Zuni Tribe shall use gates along the pilgrimage route already in existence and shall not construct gates in or alter existing fence lines without first obtaining leave of this Court.

IT IS FURTHER ORDERED the easement granted by this Court is limited to a 2 day period (one day each direction), during the summer solstice, once every four years to commence in 1993 and to continue on at 4 year intervals.

IT IS FURTHER ORDERED that the rights granted by this easement do not include the right to use defendant's water sources, nor does it include the right to light fires on the lands of the defendant.

IT IS FURTHER ORDERED that the Zuni Indian Tribe will be liable for any damage that occurs on defendant's property that is a result of the pilgrimage.

IT IS FURTHER ORDERED that the Zuni Tribe notify the defendant when the pilgrimage is going to occur at least 14 days prior to its commencement.

---

**11.** The Supreme Court's ruling in *Lyng v Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) is relevant to the severed Zuni claims based on international and constitutional law.