REIDER et al. v. ORME et al.—68 S. W. (2d) 960.

Middle Section.    October 21, 1933.

Petition for Certiorari denied by Supreme Court, March 10, 1934.

Jeff D. Fults, of Tracy City, for complainants.
Kelly & Kelly, of South Pittsburgh, for defendants.

DeWITT, J. The bill in this cause was filed by F. M. Reider and his son Henry Reider against the trustees and manager of Wonder Cave, for the purpose of compelling the removal of gates and fences at the termini of a strip of land thirty feet wide and about half a mile long, which for some time prior to 1922 had been used as a private toll road in connection with Wonder Cave by R. M. Payne. Upon a hearing the chancellor sustained the bill on the basis of certain provisions of a deed from F. M. Reider and wife to R. M. Payne, executed on June 1, 1917, and which will be hereinafter described. In the bill and amendment thereto the complainants relied upon said deed and upon an alleged easement over the roadway by prescription.

The defendants answered denying that complainants had an easement over the roadway in question, either by deed or by prescription. Their contention is that the evidence does not show any easement by prescription, and that the deed did not create such an easement in behalf of the complainants or any one else. They averred that they had the right to maintain gates and fences across the termini of the roadway. A map showing the general location of the strip of ground or old roadway, and the property of the complainants, is a part of the record in this cause.

The assignments of error are as follows:

"(1) The Court erred in holding that the complainants were entitled to an easement over the land involved by virtue of the terms of the deed between F. M. Reider and his wife and R. M. Payne, deceased.

"(2) The Court erred in refusing to the defendants the right to maintain gates and fences at the termini of the land in question."

By reference to the map in the record, the substantial accuracy of which is not disputed, it will be seen that all these properties lie in a cove just north of the base of the mountain where the state highway running along them on the east and south approaches and begins to ascend the mountain going up to Monteagle; except that on the side of the mountain and adjoining the state highway on the north is a tract of land belonging to complainant F. M. Reider. Wonder Cave, which is a place of attraction. is on the opposite side of the cave to the north from this land of Reider. Before the state highway was constructed about 1921 or 1922, a road led down the mountain from Monteagle to this cave at the eastern end of Reider's said tract on the side of the mountain, and adjoining it this road ran, and just at this eastern end of Reider's land was a toll gate. From this point this road operated as a toll road by R. M. Payne, runs northwestwardly to near the southern end of the strip herein involved, where one of the gates in controversy is located; thence it runs northwardly about half a mile to where it joins the route of a mountain road, but just before it reaches that road it has another gate, at the north end of the strip in controversy. On the west side of this strip, which is a part of the old toll roadway, and fronting on it. are tracts of land owned and occupied for residences by complainant Henry Reider and his brother. Ben Reider: and just north of them are two other tracts owned by William Cox and Ben Reider respectively. Complainant F. M. Reider owns and occupies for residence a tract of land still further north and across the present road leading from the state highway to Wonder Cave. and where it adjoins Reider's said tract it runs east and west. The most direct and convenient way for complainant F. M. Reider to go from his home place to his tract on the mountain side is through the strip of land in question and then along the old toll road to his land. F. M. Reider has lived at his present home for many years, even prior to 1922. and has lived in that immediate neighborhood since the year 1893. When the state built the highway, R. M. Payne discontinued the operation of the toll road. It appears that F. M. Reider was accustomed to use this toll road without paying toll when he walked or rode horseback, but did pay when he went along it in a conveyance. The strip of land in controversy was not closed by the gates from about the year 1922 until the spring of 1932, when the manager

for the trustees of Wonder Cave erected the gates and undertook to keep the strip of land inclosed, claiming that he needed it for pasture and a place in which to keep his cow and calf. It appears that the property is not really fit for pasture as the land is overlaid with rock and there is very little, if any, vegetation on it.

R. M. Payne died a number of years ago having devised his Wonder Cave property and whatever rights he had in the roadway to a board of trustees.

It appears that some years before June, 1917, R. M. Payne made an agreement with F. M. Reider to sell to him a tract of one and one-tenth acres of land for $27.50 and Reider agreed to convey to Payne a strip of land described as follows:

"A strip of land 30 feet wide, 15 feet on each side of the center of the Wonder Cave toll road, and about 300 yards long, and being a part of our tract of land on the side of the mountain between Sentinel Rock and the foot of the mountain, said entire tract being about 300 yards long and 150 yards wide."

This strip of land became a part of the old toll road operated by Payne.

The deed of June 1, 1917, was executed years after the agreement was made and pursuant thereto, as Mr. Payne was in poor health and requested Mr. Reider that they settle their agreement by deed, which was drafted and duly acknowledged.

After the habendum clause and covenants of warranty, this deed contains the following paragraph:

"It is further understood and agreed that the said F. M. Reider and family and his son Henry Reider and family are to have the right of ingress and egress over the strip of land conveyed herein, to R. M. Payne to the remainder of said tract, that is, the said Reiders may pass over the said strip of land herein conveyed in order to reach any other part of said tract about 300 yards in length and about 150 yards wide, not herein conveyed. But it is further stipulated and agreed on the part of F. M. Reider and son Henry Reider that no stock of theirs is to be fed on the right of way of said Wonder Cave toll road at any time or any place on said road."

The appellants insist that this provision did not constitute a reservation of a right of way over the strip of land in question, but only over that strip which was conveyed in the deed to R. M. Payne. The complainants used the strip in controversy for many years without interruption in going to and from the tract of land on the mountain side, and were only obstructed in their use of it when these gates were erected in the spring of 1932. The evidence shows that after the agreement was made, which was finally evidenced by the deed, the complainants did use this strip of land and the old roadway freely and without hindrance in this manner.

We are of the opinion that considering this fact and the respective locations of the tract on the mountain side, and the homes of the complainants, it was not contemplated that the right of ingress and egress to that tract of land on the mountain side, reserved in the deed, was to be restricted to the particular small strip of land conveyed in the deed to Payne and lying along the mountain side. Certainly the complainants needed no authority from Payne to go over F. M. Reider's land to get to the road, but they did need permission to go over the toll road to get to said tract of F. M. Reider, and the conclusion is inescapable that the purpose of the clause of reservation was to give to complainants the right to go over the toll road bed to get to that tract of land owned by F. M. Reider. The rights of ingress and egress were certainly not needed to get simply from the road to the adjoining tract of F. M. Reider, but these rights could only have been intended as applying to the use of the toll road as a means of access to the place where one would depart from the road onto that tract on the mountain side. Parol evidence is admissible to show the true consideration for a deed. Therefore, we are of opinion that the chancellor did not err in holding that the complainants are entitled to the use of the strip of land as a roadway, upon the basis of said provisions in the said deed.

■■ The chancellor did not err in holding that the complainants had failed to establish an easement by prescription. It is true that there is evidence that parties used this strip of land as a roadway without paying toll for as long as fifteen years, or even more, but the evidence does not show that it was used by the complainants or by the public adversely to the owner of the land, but rather shows that it was thus used permissively. Where the original use was permissive, the rule as to presumption of a right or grant, which is the basis of prescription, has no application. An inception of the right in mere permission stamps the character of the use as permissive. The presumption of a grant is overcome by proof of the original permission, and unless some distinct and positive assertion of a right hostile to the owner of the servient estate appears, the use cannot ripen into an easement by prescription, no matter how long the permission may continue. To establish a private right of way over the lands of another, the use and enjoyment thereof by the claimant must be shown to be adverse under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land over which it is claimed. Lewisburg v. Emerson, 5 Tenn. App., 136, and cases cited.

■ Complainants insist that this was really an old county road and that it must have been dedicated to the public by a long user. It does appear that it connected two populous settlements and each

end connected with a county road leading to Monteagle; but the evidence that this particular strip of land was once a county road is too meager and inconclusive to sustain the proposition. Evidence to establish a dedication of a way must not be left to mere inference from such facts. To establish a dedication by implication there must be proof of facts from which it positively and unequivocally appears that the owner intended to part permanently with his property and vest it with the public, and that there can be no other reasonable explanation of his conduct. McKinney v. Duncan, 121 Tenn., 265, 118 S. W., 683.

The question of reasonableness of maintaining gates upon such a roadway is one to be determined by the circumstances of the particular case. In our opinion the insistence of the defendants that they shall be allowed to maintain these gates is unreasonable. The half mile of roadway is virtually unfit for pasturage, or any other use, except perhaps to hem in a cow or a calf at times. The cow and calf belonged to Mr. Ralston. the manager, and he has a lot adjoining this roadway, so that the use of the strip of land for the cow or the calf amounts to a very trivial matter in comparison with the needs of the complainants for the free use of the road without obstruction by gates. The complainants have need of it not only as a convenient outlet from their homes, but also to send their stock along it to the tract of land on the mountain side used as a pasture. The evidence shows that the maintenance of the gates would cause great inconvenience and loss of time to the complainants in handling their stock and otherwise. It is not a situation similar to any one of those presented in Long v. Garrison, 1 Tenn. App., 211, Luster v. Garner. 128 Tenn., 160, 159 S. W., 604, 48 L. R. A. (N. S.), 87, Ann. Cas., 1914D, 769. In those cases the usefulness of the lands of the servient owners would have been seriously impaired without the maintenance of gates; and the easements could be enjoyed without serious inconvenience to those having the right to use them. In this case we see no good advantage to be gained by the defendants in maintaining these gates. especially when we consider the trouble and inconvenience which they cause to those having the right to use the easement.

The decree of the chancery court is affirmed. A decree will be entered in this court in accordance therewith. The costs of the appeal will be adjudged against the appellants and the surety on their appeal bond.

Faw, P. J., and Crownover, J., concur.