# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 21, 2002 Session

## DAVID G. OGILVIE, ET AL. v. RONALD S. LIGON, ET AL.

### Appeal from the Chancery Court for Williamson County
### No. 26948     Russ Heldman, Chancellor

---

### No. M2001-01686-COA-R3-CV - Filed September 12, 2002

---

In this boundary line dispute case, the appellee, who moved to her property in 1967, used an unopened street and a garage on the unopened street located between her land and  the adjacent property, which the appellants acquired  in 1987.  The appellee stored  items in the garage, maintained the unopened street,  and made improvements to the garage over the years. Later, a dispute arose between the parties and the appellants filed suit to establish the boundary line between the two properties, their ownership of half the unopened street, the garage and certain land behind the garage. The trial court concluded that the appellee had acquired:   1) a perpetual easement to use the west half of the garage; 2) a perpetual easement by prescription for the use of the entire driveway on the unopened street;  3) fee simple title to all of the land in the unopened street west of the joint driveway; and 4) easement and fee simple title to land to the north or rear of the garage enclosed within and underneath her fence. The trial court found the appellants entitled to an easement for the use of the easterly half of the garage and an easement by prescription for the use of entire driveway located on unopened street. For the reasons set out in this opinion, we affirm, as modified, the judgment of the trial court.

### Tenn. R. App. P. 3; Judgment of the Chancery Court Affirmed as Modified

James L. Weatherford, Sr., J., delivered the opinion of the court, in which Ben H. Cantrell, P.J, and Patricia J. Cottrell, J., joined.

E.L. Edwards III, and John D. Kitch, Nashville, Tennessee, for the appellants, David G. Ogilvie and wife Marcia E. Williams.

Douglas Fisher, Nashville, Tennessee, for the appellees, Ronald  S. Ligon and wife Martha P. Ligon.

### OPINION

On March 31, 2000, the appellants, Mr. David Ogilvie and  Mrs. Marcia E. Williams  filed suit against the appellees, Mr. Ronald. S. Ligon and Mrs. Martha Ligon,  to determine the rights and

ownership of certain land in between their respective properties. The parties own real estate located side by side on West Main Street in Franklin, Tennessee, that is separated by an "unopened street".[1] The property in dispute in this case is all within the unopened street and includes a two door garage and a rectangular area behind the garage. A survey of the unopened street[2] indicates it is 45.92 feet wide. When the street is divided down the middle in two 22.96 feet segments, the garage on the unopened street sits mostly on the easterly (Williams)side of the line, but about five inches of it sits on the westerly (Ligon) side.

The survey shows a fence between the property owned by the parties behind the garage which runs from the back of the western edge of the garage toward Fair Street back to the limits of the properties. This fence runs approximately down the middle of the unopened street. The Ligon's have planted some trees on the eastern (Williams) side of the land behind the garage, but the appellants have been responsible for mowing the grass.

Mrs. Martha Ligon rented her house for two years before her father bought the property for her in 1969. The October 1, 1969 deed conveying the property to Mrs. Ligon describes the property as "being bounded generally ... on the east by an unopened street." There is language at the end of the legal description which quitclaims "all of our right, title, claim and interest in and to the unopened street adjoining the above described property on the East" for the consideration of one dollar.

In the Ligon chain of title, there is a 1933 deed from I.S. House to Caroline C. House which describes the now-Ligon property as "continuing northeast to the center of the unopened street." The 1961 deed to the now-Ligon property from Caroline C. House to Peggy Ingold conveyed "all of my right , title, claim and interest in and to the unopened street adjoining the above described property on the East, said street having been used by myself and the owner of the property adjoining it on the East for many years."

On July 1, 1987, the appellants bought the property known as "Mapledene" located next to Mrs. Ligon's property and on the other side of the unopened street. All of the conveyance in their deed is warrantied, and the legal description includes the following language:

> TOGETHER with what is referred to as an unopened street adjoining the above described property on the West and together with that portion of the land West of the above described Mapledene tract which includes the driveway used by Mapledene tenants, together with the garage and portion of land behind said garage used by said

[1] Although the unopened street has been referred to in deeds in the chain of title of the owners of each adjoining property, there is nothing in the record to indicate that it was ever accepted by the city of Franklin. The city of Franklin was joined as a party in this action. Prior to trial the city of Franklin, by resolution, abandoned any interest it might have had in the unopened street, except for any drainage or utility easements, none of which were identified. The city of Franklin did not participate in the trial.

[2] Exhibit 27 attached to opinion as Appendix I.

tenants. Subject to the rights of others in the Joint Driveway or unopened street adjoining the property on the West.

In 1989, after a county wide reappraisal, 20 feet of the unopened street was added to each property and since that date taxes have been paid according to this increased frontage. In 1993, the tax assessor's office added a garage to the Ligon property for tax assessment purposes, and since that time the Ligons have been paying taxes on the added garage. The tax assessor's records show no garage on the Ligon property other than the one on the unopened street.

Since 1967, Mrs. Ligon, her family and guests, have used the driveway on the unopened street. Mrs. Ligon has repaved and sealed the driveway several times. Since the appellants have been at their property, starting in 1987, Mrs. Ligon has paid for the asphalting, sealing and all expenses for the maintenance of the driveway. The appellants voiced no objections and made no contributions when Mrs. Ligon repaved the driveway.

From 1967 to 1987, Mrs. Ligon maintains she made continuous use of the garage. She has stored a Mercedes, children's riding toys, bicycles, and a speedboat in the garage. According to Mrs. Ligon, none of the previous owners of the adjacent property objected to her use or maintenance of the garage – "From 1967 until now we always had shared the garage. They used one-half and I used the other half. Sometimes I used both halves." She also used the garage numerous times in connection with a Halloween event she hosts each year, and has stored items in the garage related to the Halloween event.

Mr. Ligon stated they had stored an antique Cadillac as well as another Cadillac inherited from Mrs. Ligon's mother in the garage.

Mr. Fulton Greer, Mrs. Ligon's son, remembers toys and bicycles stored in the garage, along with his motorcycle, a Mercedes, a yellow ski-boat, bicycles: "I remember there always being something of ours in the garage. I mean there was always a car, there was always something, and there was lumber stored in it ... there always has been bicycles and things stored in the garage."

According to Mrs. Ligon the garage was in "bad shape" when she first moved into her house in 1967. Electricity to the garage had been hooked up to her meter before she moved to the house in 1967, and Mrs. Ligon has paid for electricity which serves the garage.

She painted and roofed the garage. She has done this several times over the years to maintain the garage. When termites infested the garage she had it sprayed and had the termite infested boards replaced. Mrs. Ligon also had an overhead automatic garage door put in the westerly side of the garage and still another door on the westerly side of the garage that opens to her side of the driveway. Mr. Ogilvie and Mrs. Williams never voiced any objection to any of the repairs to the garage Mrs. Ligon made at her expense.

Mrs. Ligon referred to the land in question as "no man's land". When asked about her testimony that she always asked the permission of the owner of Mapledene to use the garage, Mrs. Ligon responded as follows: "I can tell you I was always courteous because I didn't think either one of us owned it." According to Mrs. Ligon, "[W]e didn't know who ... built the garage and so I always assumed it was shared and from 1967 until now we always shared the garage. They used one half and I used the other half. Sometimes I used both halves."

Mrs. Ligon didn't remember anyone else using the garage from 1967 to 1987 or that any of the prior owners of Mapledene had stored a vehicle in the garage. According to Mrs. Ligon, the appellants never used the west side of the garage.

In describing her use of the garage as "off and on", Mrs. Ligon explained that she would put the Mercedes in the garage and leave it there for two years but did admit that there were certain "very short periods of time" that there was nothing of hers in the garage. She did not recall whether she was using the garage in 1987 when the appellants moved in, but did not dispute the appellants' word that the garage was empty when the appellants moved into their home.

Mr. Ogilvie stated that Mrs. Ligon came around in June of 1993 and asked if she could store some things in the westerly half of the garage. When Mr. Ogilvie discussed this with his wife, Ms. Williams responded, "Get a letter."

Mrs. Ligon signed a letter dated November 9, 1993, authored by her husband and addressed to Mrs. Williams which provided:

> As per your request, I am writing you this letter pertaining to the garage that sits on the old city alley that divides our properties. I appreciate your letting me use half the garage which I have enjoyed the use of from all previous owners since acquiring my property in 1967. I have always maintained the driveway and have black topped it several times and desiring to be a good neighbor want to grant you and your family the right to use the asphalt driveway.

Mrs. Williams testified that she recalled that Mrs. Ligon first started using the garage some months prior to the date of the letter.

Mrs. Ligon maintained she had used the garage from 1967 until this litigation. Mrs. Ligon stated she was sure she had used the garage from 1987 until 1993. She had used it for storage because the old garage doors were hard to open. She produced checks dating from April 1993 to March 3, 1994 for repair work, painting, and installation of an automatic door for the garage. She did not tell the appellants that there were termites in the garage before arranging for treatment and repair —"you understand, I thought this was an unopened street and this was no man's land that we both owned. And we both shared."

On October 31, 1999, the appellants requested that the Ligons remove their belongings from the garage. The Ligons refused to do so without reserving their right to claim an interest in the garage, and this litigation soon followed.

At the conclusion of the trial, the trial court granted: 1) both parties a perpetual easement by prescription for the use of the entire driveway located on the unopened street; 2) Mrs. Ligon a perpetual easement for the use of the west half of the garage; and 3) the appellants an easement for the use of the easterly half of the garage. The trial court found that the appellants were equitably estopped to assert she had no right to use any part of the garage.

The trial court also found that Mrs. Ligon had fee simple title to all of the land in the "unopened street" west of the joint driveway and both an easement and fee simple title to the land to the north or rear of the garage which is enclosed within and underneath her fence. The court concluded that the appellants had fee simple title in the area of land in the unopened street to the east of the driveway.

The trial court based its rulings on 1) the language in the appellant's deed regarding Mrs. Ligon's rights in the unopened street; 2) the doctrine of estoppel by deed; 3) the history of Mrs. Ligon's use and maintenance of the driveway, garage and area North of the garage; and 4) T*ennessee Code Annotated* §§ 28-2-101-103 regarding adverse possession.

Citing *Tennessee Code Annotated* § 28-2-102, the trial court found that it did not have the authority to grant the relief sought in the appellant's complaint. The trial court found that "at the time that Mr. Ogilvie and Mrs. Williams purchased the property [July 1, 1987], their predecessor in interest was already barred from bringing an action to stop Mrs. Ligon from doing what she normally had been doing; and, therefore, Mr. Ogilivie and Ms. Williams were subsequently barred because the statute had already run. The Court finds that there was a bar because of the seven -year statute." The trial court concluded that Mrs. Ligon "had adverse possession rights to the entirety of the garage, the driveway, and the area behind the garage where the trees were planted in general."

The appellants motion to alter and amend the judgment was denied and this appeal followed.

ANALYSIS

*Tennessee Rule of Appellate Procedure 13(d) provides:* "Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." *Tenn. R. App. P*. 13(d). For issues of law, the standard of review is de novo, with no presumption of correctness. *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79, 80 (Tenn. 1996).

**I.  Whether the disputed property, all of which lies within the eastern half of the "unopened street," is the property of the Appellants by deed.**

According to the survey of the unopened street, the garage sits mostly on the easterly (Williams)side of the line, but about five inches of it sits on the westerly, or Ligon side.  The fence behind the garage that separates the two properties, runs down the middle of the unopened street.

The appellee concedes that the appellants own the fee simple title to the middle (or eastern half) of the unopened street subject to the easement rights of Mrs. Ligon.

It is a general rule that a grant of land bounded on a road conveys to the grantee title in fee to the middle line or center of the road, subject to the easement, if the grantor owned so far and expressed no contrary intent.  *Walker v. Tanner*, 275 S.W.2d 958, 959 (Tenn. 1954).

In *Knierim v. Leatherwood*, 542 S.W.2d 806, 810-811 (Tenn. 1976), our Supreme Court reviewed a landowner's rights and interest in an road that bordered the landowner's property:

> An abutting owner has a greater interest than the general public, and has an easement of access over the road to his premises, even after a public road is abandoned.(citations omitted)

> In *Current, et al., v. Stevenson, et al.,*173 Tenn. 250, 116 S.W.2d 1026 (1938), this Court, speaking through the late Justice McKinney, quoted with approval from 29 C.J., 547 n. 3 as follows:

> "An abutting owner has two distinct kinds of rights in a highway, a public right which he enjoys in common with all other citizens, and certain private rights which arise from his ownership of property contiguous to the highway, and which are not common to the public generally, and this regardless of whether the fee of the highway is in him or not. . . . They include the easement of access . . . .173 Tenn. at 254-55, 116 S.W.2d at 1028."

> Again quoting from an earlier Tennessee case, the *Current* Court declared**:**

> "But the owners of lots bordering upon a public street, have an easement of way in the street, in addition to the use of it in common with the people generally. This additional right of way, is private property . . . .173 Tenn. at 255, 116 S.W.2d at 1028."

> Moreover, our courts have long held that "persons who buy lots according to plats or plans whereon streets are marked or exist acquire irrevocable rights to such streets." (Citations omitted).

But his easement is limited to the street or way upon which his lot is situated and in such other streets or ways as are necessary or convenient to his ingress or egress. (Citations omitted).

*Knierim v. Leatherwood*, 542 S.W.2d at 810-811.

After reviewing the record in this case and in accordance with the above case law, we find that each party owns title in fee to the middle line or center of the unopened street subject to the easement rights of ingress and egress of the other party.

**II.          Whether the trial court committed reversible error when it held that the Appellees were entitled to an easement to any of the disputed property by adverse possession.**

In *Bradley v. McLeod*, 984 S.W.2d 929 (Tenn. Ct. App. 1998), this court stated the rules regarding easements as follows:

An easement is an interest in property that confers on its holder an enforceable right to use another's property for a specific purpose. *See Brew v. Van Deman*, 53 Tenn. 433, 436, 6 Heisk. 433 (1871); *Clayton v. Wise*, 1 Tenn. Civ. App. 620, 638-39 (1910). Parties may create an easement by express grant or reservation by including language in their deed reserving for certain identified parties a limited right to use some or all of the land conveyed. *See Long v. Mayberry*, 96 Tenn. 378, 382, 36 S.W.1040,1041 (1896); *Reider v. Orme*, 17 Tenn. App. 497, 500-01, 68 S.W.2d 960, 962 (1933).

Easements may also be created by implication, prescription, estoppel, or eminent domain. See *Pevear v. Hunt*, 924 S.W.2d 114, 115-16 (Tenn. Ct. App. 1996).

***

An easement by prescription (or, at it is sometimes called, by adverse possession) also differs from an express easement in that it is not based on the language in a deed but rather on the use of the property. An easement by prescription arises when a person, acting under an adverse claim of right, makes uninterrupted, open and visible use of another's property for at least twenty years with the owner's knowledge and acquiescence. *Long v. Mayberry,* 96 Tenn. at 382, 36 S.W. at 1041; *Pevear v. Hunt,* 924 S.W.2d at116.**.**

984 S.W.2d at 934.

The party claiming a prescriptive easement has the burden of proving by clear and convincing evidence the facts required to establish a prescriptive easement. *McCammon v. Meredith,* 830 S.W.2d 577, 580 (Tenn. Ct. App. 1991).

Where a party is required to establish facts by clear and convincing evidence, on appeal, this court must review the evidence *de novo* to determine whether or not that party carried its burden; i.e., whether the evidence makes the factual conclusion "highly probable" or leaves no substantial doubt about the correctness of the conclusion. *Vinyard v. Betty*, No. M2001-00642-COA-R3-CV, 2002 Tenn. App. LEXIS 301 at 6 (citing *Walton v. Young*, 950 S.W.2d 956, 960 (Tenn. 1997) and *Estate of Acuff v. O'Linger*, 56 S.W.3d 527, 537 (Tenn. Ct. App. 2001)).

The record establishes that Mrs. Ligon made uninterrupted use of the west half of the garage for the required twenty years beginning in 1967. She used the garage for storage of cars, speed boats, bicycles and other things. The electricity for the garage was hooked up to her meter when she came to the property. According to Mrs. Ligon, none of the previous owners of the adjacent property objected to her use or maintenance of the garage – "From 1967 until now we always had shared the garage. They used one-half and I used the other half. Sometimes I used both halves." She had the garage painted, roofed, repaired and treated for termites. She installed a garage door and a side door in the garage.

We find that Mrs. Ligon has established a prescriptive easement for the use of the west half of the garage.

The land survey establishes that the fence between the parties' property runs from the back of the western edge of the garage back to the limits of the property– or down the middle of the unopened street. The only use the Ligons contend that they made of this area was to plant some trees. The Ligons concede that the appellants mowed this area. We find the evidence insufficient to establish a prescriptive easement for the portion of land "to the north or rear of the garage" which lies within the eastern (appellant's side) of the unopened street.

The appellant also raised the issues of whether the trial court committed reversible error when it applied the doctrines of estoppel by deed, equitable estoppel and *Tennessee Code Annotated* § 28-2-101 regarding adverse possession. We find that the *Tennessee Code Annotated* § 28-2-101 and the seven year statute of limitations do not apply in this case as Mr. and Mrs. Ligon did not have "conveyance, devise, grant, or other assurance of title" for the property in question as required by the statute. The language at the end of the appellees' deed conveying "right, title, claim and interest in and to the unopened street adjoining the above described property on the East"is quitclaim language and does not grant assurance of title.

We also find the doctrines of estoppel by deed and equitable estoppel do not apply to this case. However, as we have sustained the trial court's ruling on other grounds we do not find the trial court's reliance on these doctrines or the statutes regarding adverse possession to be reversible error.

## CONCLUSION

We find that each party owns title in fee to the middle line or center of the road subject to the easement rights of ingress and egress of the other party. We find that Mrs. Ligon has a

prescriptive easement to use the west half of the garage and affirm the trial court's ruling on that basis.  We find that Mrs. Ligon does not have any property rights to the land  "to the north or rear of the garage" which lies within the eastern (appellant's side) of the unopened street  and modify the trial court's ruling to reflect the same.

As we have sustained the trial court's ruling, the issue raised by the appellee of whether the trial court erred in failing to find that Mrs. Ligon had a license for the use of the westerly half of the garage is pretermitted.  Costs are taxed to the appellant

_____

JAMES L. WEATHERFORD, SR. J.