IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 13, 2005 Session

## COLBY M. REYNAUD v. JOHN KOEHLER, ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 160548-2    Daryl Fansler, Chancellor**

---

**No. E2004-02999-COA-R3-CV  -  FILED AUGUST 8, 2005**

---

This case arises out of a dispute between adjacent landowners regarding whether an easement can be obstructed by a locked gate. The plaintiff placed a locked gate across the easement and asserts that it is necessary for the protection of her person and property. The defendants disagree and argue that the locked gate unreasonably interferes with ingress and egress to their property. The trial court found in favor of the plaintiff. We find that the plaintiff has failed to present sufficient evidence that her person or property is at risk and that she has unsuccessfully attempted alternate means of protecting same and, therefore, it is our determination that plaintiff has failed to prove that the locked gate is necessary. We further find that the locked gate unreasonably interferes with the defendants' use of the easement. Based upon these findings, we reverse the judgment of the trial court in part, affirm in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part
and Affirmed in Part; Cause Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Kristi M. Davis, Knoxville, Tennessee, for the Appellants, John Koehler and Jacqueline Koehler.

William L. Waters, Knoxville, Tennessee, for the Appellee, Colby M. Reynaud.

**OPINION**

This case concerns the proper use of an easement. The parties reside on adjacent multi-acre tracts of real property located off of Bud Hawkins Road in a sparsely populated area of rural Knox County. The defendants/appellants, John and Jacqueline Koehler, owners of the dominant estate,

purchased their property in March of 1997, and the plaintiff/appellee, Colby Renaud, owner of the servient estate, purchased her property in August of 2000. Ms. Reynaud's property is burdened by a twenty five foot wide joint permanent easement that is one-quarter mile in length and runs from Bud Hawkins Road, along the inside of the northern and eastern boundaries of her property, to the Koehlers' property line. Ms. Reynaud does not question the Koehlers' right to use the easement which provides the Koehlers with the sole means of ingress and egress to their property. The easement also provides Ms. Reynaud with access to her own driveway which branches off of the easement between Bud Hawkins Road and the Koehlers' property line.

When Ms. Reynaud purchased her property, there was a gate located on the easement between Ms. Reynaud's driveway and the Koehlers' property line. This gate had been constructed by Mr. Koehler who is a stonemason and blacksmith. Ms. Reynaud subsequently decided that she wanted a gate across the easement for her personal protection and the protection of her husband's personal property which includes landscaping equipment located on her property. In March of 2002, at the behest of Ms. Reynaud and her husband, Francis King Meeks, the Koehlers agreed to relocate their gate to a point near the easement entrance from Bud Hawkins Road. According to Ms. Reynaud's testimony, the parties initially agreed to keep the gate locked when either party was not home and unlocked when either party was home, but this plan proved unsatisfactory. Ms. Reynaud testifies that the parties thereupon agreed to keep the gate locked at all times; however, the Koehlers' attest that they never agreed to lock the gate at all times. In any event, the Koehlers subsequently removed the gate and returned it to its original location. After the Koehlers removed their gate, Ms. Reynaud replaced it with another gate that is the object of controversy in this case. The gate installed by Ms. Reynaud (hereinafter referred to as "the gate") is fourteen feet wide, of metal construction and can be locked by means of a combination padlock which secures it to an upright post.

In February of 2004, Ms. Reynaud filed a complaint against the Koehlers in the Chancery Court for Knox County which states "since she has constructed the gate that the [Koehlers] have failed and refused to keep the gate latched and locked." The complaint "seeks an injunction enjoining and prohibiting [the Koehlers] and each of them from allowing the gate to remain unlocked at such time as they enter or leave compelling them and each of them to keep the gate ... locked at all times." By answer and counter-complaint, the Koehlers admit to leaving the gate open, contend that keeping the gate locked is unduly burdensome to them and their invitees, and request an injunction preventing Ms. Reynaud from closing and locking the gate.

After trial of the case, the trial court entered an order on August 11, 2004, which decrees that Ms. Reynaud "is entitled to a permanent injunction enjoining the [Koehlers] from interfering with [her] right to maintain a locked gate and that the [Koehlers] are likewise mandatorily enjoined from leaving the gate unlocked as they use it for their own ingress and egress." The Koehlers then filed a motion requesting that the trial court "revise its Memorandum Opinion and find that the gate should be removed." At or around the same time, Ms. Reynaud also filed a motion requesting that the trial court declare the rights and obligations of the parties with regard to maintenance of the easement. By order and incorporated memorandum opinion entered November 30, 2004, the trial court denied the Koehlers' motion for revision, incorporated its order of August 11, 2004, as a final

order, and declared that both the Koehlers and Ms. Reynaud had equal rights to maintain the easement. The Koehlers appeal this order.

The issue we address in this case is whether under the facts presented the placement of the locked gate is necessary to Ms. Reynaud's use and enjoyment of her land and does not unreasonably interfere with the Koehlers' use of the right of way.

This is a non-jury case and, accordingly, our review is *de novo* upon the record of the trial court without any presumption of correctness attaching to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996) and Tenn. R. App. P. 13(d). We must, however, presume the trial court's factual findings to be correct absent evidence preponderating to the contrary. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

In *Cole v. Dych*, 535 S.W.2d 315, 320 (Tenn. 1976), the Tennessee Supreme Court stated the general rule regarding the propriety of placing a gate across an easement as follows:

> The maintenance of gates is not necessarily inconsistent with the existence of an easement. Generally speaking, the owner of land subject to a right-of-way may maintain gates, if necessary to his use and enjoyment and where such obstructions do not unreasonably interfere with the use of the way. [Citations omitted]

Whether it is reasonable to maintain a gate over an easement will be determined by the particular circumstances of the case. *Reider v. Orme*, 68 S.W.2d 960 (Tenn. Ct. App.1933).

We first address Ms. Reynaud's argument that the locked gate is necessary to the use and enjoyment of her property. Ms. Reynaud contends that the locked gate is necessary for her personal security and for the security of personal property belonging to her husband and in her brief, she asserts as follows:

> Ms. Reynaud is sometimes home alone and she feels she needs a gate across the easement for her protection. She further observed that because the easement appeared to be a mountain road, sometimes people drive through to the Koehlers' gate and then turn around and leave. Ms. Reynaud further testified that because her husband, Francis Meeks, is a landscaper he often leaves at 7:00 in the morning and does not return until 8:30 or 9:30 at night.

> Because Ms. Reynaud owns a sizeable tract of property (six acres) and because it is located in a rural area, Francis Meeks maintains all of his landscaping equipment on the property, said equipment being worth approximately $20,000.00. Ms. Reynaud is concerned that if the equipment was readily accessible it could be easily hot wired and driven off if someone chose to do so. (References to record omitted)

-3-

We do not agree that Ms. Reynaud has shown that a locked gate across the easement is necessary for the security of her person and property for the simple reason that she has not demonstrated that either her person or property is at risk. It appears that, although Ms. Reynaud moved into her house on August 31, 2000, she did not determine that she needed a gate across the easement until March of 2002. Ms. Reynaud attests that at some point she became concerned because on occasion strangers would drive up the easement and would turn around in her driveway to leave. However, Ms. Reynaud does not contend that she has ever been threatened personally by anyone coming onto her property, nor has she ever called the sheriff because of a perceived threat to herself or because she felt that her husband's property was at risk of theft. At trial, her attorney stated that she has never had a break-in and, despite her asserted concern over her personal security, Ms. Reynaud concedes that she has no security system in her house. Although Ms. Reynaud testified that she and her husband were in the process of building a barn to protect her property, she presents no proof that she had taken any steps to insure that her husband's property was protected and admitted that "we do have our equipment and personal property all over our property." This fact is confirmed by photographs contained in the record. We further note that while Ms. Reynaud stated at trial that she needed a gate "to keep people from traversing the property, *whether they're innocent or not*" she has never posted "no trespassing" or "private property" signs. Finally, we observe that Ms. Reynaud has not availed herself of the opportunity to place a gate across her own driveway which would afford her some degree of security and would present no obstacle to the Koehlers' use of the easement. Based upon the evidence before us, we do not agree that Ms. Reynaud has carried her burden of showing that the gate across the easement is necessary to her security. We are compelled to this conclusion because the evidence does not suggest the existence of a real threat to either Ms. Reynaud or to her husband's property. While we do not deny that it is conceivable that someone might come onto Ms. Reynaud's property with the intent of harming her or stealing her husband's property, it has not been shown that the potential for those occurrences is high enough in this case to justify the placement of a locked gate across the easement. Our conclusion that Ms. Reynaud has failed to prove that the gate is necessary is also based upon our observation that there is no proof in this case that she made unsuccessful attempts to insure her security which did not interfere with the easement. We do not see how it can be reasonably asserted that a gate is *necessary* when other available options have not been explored.

This case is factually distinguishable from *Cooper v. Polos*, 2002 Tenn.App. LEXIS 227, No. E-2001-00665-COA-R3-CV,( Tenn.App.E.S. filed April 3, 2002) in which we held that the evidence preponderated in favor of the factual conclusion that installation of a gate was necessary for the use and enjoyment of the gatekeeper's land. In *Cooper*, however, there was proof that for many years, trespassers had utilized the right-of-way to gain access to other lands; that some of these trespassers had committed acts of theft and vandalism on the gatekeeper's land and the lands of others; that individuals had been seen early in the morning and late at night at various locations on the easement; that trespassers had left behind empty beer bottles and fast food wrappers; and that some of the trespassers had been armed. Ms. Reynaud did not present similar compelling proof in this case before us. In *Cooper*, there was objective proof of the necessity for the gate, rather than a speculative concern for safety and protection.

Our determination that the gate urged by Ms. Reynaud is inappropriate in this case is further supported by evidence showing that the gate will significantly and unreasonably interference with the Koehlers' use of the easement. In this regard, Mr. Koehler testified as follows:

> It continuously takes time out of my day, especially on days when I have to be in and out of the house seven or eight times during the course of the day, which translates to fourteen or so stops and whatnot. Also, it causes – when it is frozen, it takes me more than thirty seconds to, you know, thaw it out and whatnot. I've also come home very late at night on several occasions and literally been out there five or ten minutes really struggling with it to get in, just have access to get home, which is difficult when you're tired and had a hard day.

Ms. Koehler testified as to problems that the gate poses to friends and relatives who are invited to their home. She attested that there is water standing around the gate after it has rained and that friends have gotten their clothing muddy trying to open the gate. She also testified that she plans to have her mother take care of her young son, but that her mother will not be able to do so if the gate is in place, because she has degenerative arthritis and will be unable to open the lock. Ms. Koehler further testified regarding her concern with the delay that the gate would cause should an emergency arise- "I'm most particularly worried in an emergency situation, you know. If it takes thirty seconds or a minute to open, that's still a delay. And if something was wrong with us or my son I wouldn't want that delay."

As previously stated, the issue raised by the parties in this appeal is whether a *locked* gate can be maintained on the easement. We recognize that there is a difference between a gate and a locked gate - obviously a locked gate offers more security, but places a greater burden on the users of the easement. There was considerable proof introduced at trial of the inconvenience caused by the locking and unlocking of the gate. Since we have ruled that a locked gate cannot be maintained on the easement, then the next question becomes - can Ms. Reynaud maintain an unlocked gate on the easement if she so chooses? In the interest of judicial efficiency and pursuant to Rule 13 of the Tennessee Rules of Appellate Procedure, we will address this issue. It is our opinion, based on the facts of this case as previously stated and consistent with our ruling regarding the locked gate, that Ms. Reynaud failed to present sufficient proof that a gate, even an unlocked gate, was necessary for the use and enjoyment of her property. Accordingly, we decree that the gate shall be removed from the easement.

For the foregoing reasons, we reverse the judgment of the trial court to the extent that it granted to Ms. Reynaud a permanent injunction enjoining the Koehlers from interfering with Ms. Reynaud's right to maintain a locked gate; enjoined the Koehlers from leaving the gate unlocked; and denied the Koehlers motion to have the gate removed. The judgment of the trial court is affirmed with regard to maintenance of the easement because this issue was not raised on appeal. The cause is remanded for collection of costs below and for further proceedings, if any, as may be necessary. Costs on appeal are adjudged against Colby M. Reynaud.

_____
SHARON G. LEE,  JUDGE