IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 21, 2018 Session

**CHARLES WEBSTER v. STEVE L. WALKER**

**Appeal from the Chancery Court for Knox County**
**No. 192055-3      Michael W. Moyers, Chancellor**

_____

**No. E2018-00611-COA-R3-CV**

_____

An easement owner filed a complaint against the dominant estate owner, arguing that the dominant estate owner's installation of locked gates across the easement unreasonably interfered with his use of the right-of-way. The dominant estate owner moved for summary judgment, arguing that the easement owner was not entitled to an "open" right-of-way, without impediments. The trial court granted the summary judgment motion and the easement owner appealed. Upon review of the record, we conclude there is a genuine issue of material fact regarding whether the locked gates are necessary to the dominant estate owner's use and enjoyment of his property and whether the gates unreasonably interfere with the easement owner's use of his right-of-way. Accordingly, we reverse the trial court's judgment and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and THOMAS R. FRIERSON, II, JJ., joined.

Kevin A. Dean and Arthur Gloster Seymour, Jr., Knoxville, Tennessee, for the appellant, Charles Webster.

Stephen Kent Garrett, Corryton, Tennessee, for the appellee, Steve L. Walker.

# OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves a right-of-way, or easement, along a narrow strip of land used to reach a larger parcel of property. Charles Webster owns a home with an address on Rutledge Pike in Mascot, Tennessee. Before the incidents giving rise to this case, Mr.

Webster owned a strip of land measuring approximately 15 feet wide by 565 feet long (the "strip of land" or the "Property") that extended from the rear of his residential property on Rutledge Pike to Millertown Pike. Mr. Webster used this strip of land to access the rest of his property from Millertown Pike when it was not convenient or he did not want to use Rutledge Pike. Steve L. Walker owns the land on either side of this strip of land, and he leases both of these parcels to an entity called Kids' Place, Inc., which operates an early childcare facility, an after-school program, and a summer camp program.

Mr. Walker became interested in acquiring the Property from Mr. Webster in or around 2010, but Mr. Webster initially refused to transfer the strip of land. In or around early 2013, however, Josh Allis, the program manager for Kids' Place, informed Mr. Webster that Kids' Place wanted to build a swimming pool for the children's use but that the local authority would not issue a permit for this purpose unless Mr. Walker, who owns the land that Kids' Place leases, could show that he owned the strip of land. Upon learning this, Mr. Webster agreed to convey the Property to Mr. Walker so long as he was able to continue using it to access his property that adjoined the strip of land. Mr. Walker offered to pay for the Property, and Mr. Webster responded that Mr. Walker could do whatever he thought was right; he left the issue of compensation up to Mr. Walker. In his deposition, Mr. Webster said that when Mr. Walker offered to buy the Property from him, Mr. Webster said, "I don't see what it matters whose deed it is, as long as I have an open roadway through there. That's my concern." Mr. Webster explained why it was important to him to have a right-of-way across the strip of land and be able to access his property from Millertown Pike:

> This is a steep driveway here [off Rutledge Pike]. My house is 500 feet above the highway there, a steep driveway. This [off Millertown Pike] is a field with a nice driveway which I can get in. This [rear of Mr. Webster's property that abuts the strip of land] is property which could be utilized later. So I need that right-of-way in case I need to -- I might even want to build back in there, I might want to do anything, so I need that right-of-way.

Mr. Walker had a warranty deed prepared that Mr. Allis presented to Mr. Webster to review and sign if he found it acceptable. Mr. Webster signed the warranty deed on February 20, 2013, and the relevant portion of it provides:

> WITNESSETH that said First Party [Charles E. Webster], for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration in hand paid by Second Party [Steve L. Walker], the receipt of which is hereby acknowledged, has granted, bargained, sold and conveyed unto Second Party the following described premises, to wit:

. . . .

First Party herein retains a right-of-way to use the strip of land being conveyed herein in order to access the remainder of his property located to the south of the strip herein conveyed. Said remainder of First Party's property also fronts on Rutledge Pike (U.S. Highway 11-W).

Shortly after obtaining possession of this strip of land, Mr. Walker had three locked gates installed across the Property that require Mr. Webster to get out of his vehicle six times to open and close each gate whenever he wants to travel from Millertown Pike to his house or from his house to Millertown Pike. Mr. Webster has asked Mr. Walker to remove the gates so that Mr. Webster has the open and unobstructed right-of-way he expected to have when he agreed to transfer the Property, but Mr. Walker has refused to remove the gates or allow them to remain open.

Mr. Webster filed a complaint against Mr. Walker on July 27, 2016, and asserted the following causes of action: declaratory judgment, permanent injunction, rescission, attachment, ejectment, quiet title, and damages. Mr. Webster's request for damages was based on his assertion that Mr. Walker or his agents destroyed and removed a fence that had separated his property at 9138 Millertown Pike from Mr. Walker's adjacent property at 9136 Millertown Pike. Mr. Webster alleged that the fence was situated entirely on his property.

Mr. Walker answered the complaint, the parties engaged in discovery, and Mr. Walker then filed a motion for summary judgment on the issues of rescission and Mr. Webster's request for injunctive relief. The trial court held a hearing on March 18, 2018, and it entered an order granting the motion on March 22. The court wrote:

1. The Warranty Deed conveying the property at issue from the Plaintiff to the Defendant dated February 20, 2013 provides that Plaintiff shall have an express easement by reservation, specifically retaining "a right-of-way to use the strip of land being conveyed herein in order to access the remainder of his property located to the south of the strip herein conveyed. Said remainder of [Plaintiff's] property also fronts on Rutledge Pike (U.S. Highway 11-W)."

2. The above easement is silent as to whether the way must be kept open.

3. In accordance with Tennessee common law as set forth in the case of *Gammo v. Rolen*, 2010 WL 2812631 (Tenn. Ct. App. 2010), the rule in this State is that "gates may be maintained across an easement so long as the grant does not specify that the way must be kept open, and so long as the gates do not unreasonably interfere with the right of passage." The Court

finds that since the grant in the case at bar does not "specify that the way must be kept open," the Defendant has the right to construct and maintain gates on the easement right-of-way. The Court further finds that the gates "do not unreasonably interfere with [Plaintiff's] right of passage" and that they have a reasonable purpose, to wit, the safety and security of children who are regularly present on Defendant's property.

4. The Court further finds that Plaintiff has been provided with a key to open the gates in question and that Plaintiff does not regularly use the right-of-way at issue, as he has other access to his property directly off Rutledge Pike (U.S. Highway 11-W). Thus, the Court finds that the gates do not act as an impediment to the access of his property and that any inconvenience that may be caused to him by having to unlock same is outweighed by the need to have the gates in place for benefit of the childcare and summer camp facility that operates on Defendant's property.

Mr. Webster's claim for rescission was based in part on fraud in the inducement. With respect to this claim, the court wrote:

5. The Court further finds that Defendant is entitled to judgment in his favor as a matter of law on the promissory fraud theory espoused by Plaintiff. Specifically, the elements necessary to find the existence of promissory fraud (as set forth in T.P.I. Civil 8.41) require Plaintiff to be able to prove, among other things, that he was "unaware that [Defendant] did not intend to perform the promise" and that "[Plaintiff] was justified in relying upon the promise made by [Defendant]." The Court finds based upon the clear language contained in the Warranty Deed at issue, which the Plaintiff signed, and the other evidence in this record, that he could not, as a matter of law, successfully prove the above elements necessary to make out a case of promissory fraud. Further, the Court finds that Plaintiff could easily have required language to be placed into the Warranty Deed compelling the way be left open and that he enjoy unrestricted access, but he did not do so.

The trial court stated that its order was to be deemed a "final judgment, appealable as any other final judgment."

Mr. Webster appeals from this order and argues the trial court erred in granting Mr. Walker summary judgment for the following reasons: (1) genuine issues of material fact exist regarding whether Mr. Walker's installation of locked gates unreasonably interferes with Mr. Webster's right-of-way over the Property; and (2) genuine issues of material fact exist with respect to Mr. Webster's other claims for relief.

## II. ANALYSIS

### A. Standard of Review

A trial court's award of summary judgment does "not enjoy a presumption of correctness on appeal." *Biancheri v. Johnson*, Nos. M2008-00599-COA-R3-CV, M2007-02861-COA-R3-CV, 2009 WL 723540, at *5 (Tenn. Ct. App. Mar. 18, 2009) (citing *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003)). Appellate courts review a trial court's decision on a motion for summary judgment de novo. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04; *see also Rye*, 477 S.W.3d at 261-62 (quoting TENN. R. CIV. P. 56.04). If the party moving for summary judgment does not bear the burden of proof at trial, as here, the movant will be entitled to succeed on the motion if he or she "affirmatively negat[es] an essential element of the nonmoving party's claim or . . . demonstrate[es] that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264; *see also* Tenn. Code Ann. § 20-16-101.

A court ruling on a motion for summary judgment is required to take the "strongest legitimate view of the evidence" in favor of the non-moving party "and discard all countervailing evidence." *Davis v. McGuigan*, 325 S.W.3d 149, 157 (Tenn. 2010) (citing *Blair v. West Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)). A genuine issue of material fact exists "if the undisputed facts and inferences drawn in the [non-movant's] favor permit a reasonable person to reach more than one conclusion." *Id*. Then, "'if there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied.'" *Johnson v. City Roofing Co.*, No. W2003-01852-COA-R3-CV, 2004 WL 1908794, at *2 (Tenn. Ct. App. Aug. 25, 2004) (quoting *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn.1993)); *see also Dooley v. Everett*, 805 S.W.2d 380, 383 (Tenn. Ct. App. 1990).

### B. Mr. Webster's Claim for Injunctive Relief

"'An easement is a right an owner has to some lawful use of the real property of another.'" *Cellco P'ship v. Shelby Cnty.*, 172 S.W.3d 574, 588 (Tenn. Ct. App. 2005) (quoting *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996)). The owner of an easement has an "enforceable right to use real property that belongs to another for a specific use." *Rogers v. Roach*, No. M2011-00794-COA-R3-CV, 2012 WL 2337616, at *6 (Tenn. Ct. App. June 19, 2012) (citing *Bradley v. McLeod*, 984 S.W.2d 929, 934

(Tenn. Ct. App. 1998)).  The law in Tennessee is that an easement owner's rights are "paramount in the easement area" to those of the landowner and that the landowner is not permitted to "unreasonably interfere" with the easement owner's rights.  *Cox v. E. Tenn. Natural Gas Co.*, 136 S.W.3d 626, 627-28 (Tenn. Ct. App. 2003); *see also Rogers*, 2012 WL 2337616, at *9.

The parties do not dispute that Mr. Webster retained an easement over the Property when he conveyed it to Mr. Walker.  The issue centers around whether Mr. Walker, as the landowner, has taken actions that unreasonably interfere with Mr. Webster's rights as the easement owner.  The *Rogers* court considered when a landowner's erection of gates or fences across an easement constitute an unreasonable interference with an easement holder's rights.  "Generally, the question in such situations is whether, under the specific facts presented, the fence or gate is necessary to the use and enjoyment of the landowner's land and whether it does not unreasonably interfere with the easement holder's use of the right of way."  *Rogers*, 2012 WL 2337616, at *9 (citing *Reynaud v. Koehler*, No. E2004-02999-COA-R3-CV, 2005 WL 1868816, at *2 (Tenn. Ct. App. Aug. 8, 2005)).

Mr. Walker addressed the need for the gates in an affidavit he attached to his statement of undisputed material facts.  Mr. Walker stated that the entity that leases his property for purposes of operating the early childcare facility, after-school program, and summer camp program utilizes over eight acres, which now include the strip of land Mr. Webster conveyed to Mr. Walker.  According to Mr. Walker, "[c]hildren traverse from one side of the property to the other with great regularity; and for safety and legal purposes, it is necessary to have a fence which encompasses the entirety of the property."

In arguing that the locked gates did not unreasonably interfere with Mr. Webster's use of the Property, Mr. Walker directed the trial court to Mr. Webster's deposition, in which Mr. Webster acknowledged that he had been provided a key to open the three gates and thereby access his property.  Mr. Walker emphasized that Mr. Webster did not have any sort of document requiring Mr. Walker to maintain an "open express easement."

Mr. Webster responded to Mr. Walker's statement of undisputed material facts by contending that the locked gates do, in fact, unreasonably interfere with his use of the right-of-way, despite the fact that he has a key that unlocks the gates.  Mr. Webster was 86 years old when he gave his deposition, and he stated that he has had "multiple foot surgeries."  Mr. Webster testified that when he uses the right-of-way, he has to get out of his truck six times to open and close the three gates.  He also testified that at least one of the gates is hard to open.

In granting Mr. Walker's motion for summary judgment, the trial court relied on the case *Gammo v. Rolen*, No. E2009-02392-COA-R3-CV, 2010 WL 2812631 (Tenn. Ct. App. July 19, 2010).  In that case, the Court of Appeals wrote that "[a] fence or gate may

only be erected on an easement if it is shown that the same is necessary for the servient tract owner's use and enjoyment of his land, and if it does not [un]reasonably interfere with the use of the easement." *Gammo*, 2010 WL 2812631, at *2. The Court continued:

> [G]ates may be maintained across an easement so long as the grant does not specify that the way must be kept open, and so long as the gates do not unreasonably interfere with the right of passage. The "erection of a gate must be evaluated in terms of whether it is 'necessary to [the servient estate's] use and enjoyment,' and whether the maintenance of the gate 'unreasonably interfere[s] with the use of the' easement."

*Id.* at *3 (quoting *Cooper v. Polos*, 898 S.W.2d 237, 241-42 (Tenn. Ct. App. 1995)) (other citations omitted). "Whether it is reasonable to maintain a gate over an easement [is] determined by the particular circumstances of the case." *Reynaud*, 2005 WL 1868816, at *3 (citing *Reider v. Orme*, 68 S.W.2d 960, 963 (Tenn. Ct. App. 1933)).

When Mr. Allis was asked during his deposition whether it would be possible to keep the children safe by erecting a fence or gate on either side of the strip of land rather than across it, Mr. Allis responded in the affirmative. Mr. Allis testified as follows:

> Q: Let me ask you a question: Why could we not erect a fence running north and south along the east line of the [strip of land] and a fence on the west side and open Gate 1 and 2 for access? Is that possible?
>
> A: I mean, anything is possible.
>
> . . . .
>
> Q: . . . Just hypothetically, that fence could be built?
>
> A: You could build a fence anywhere if you wanted to. I mean . . .
>
> Q: Okay. Would that fence keep children out of this . . . right-of-way that we have marked on Exhibit 3?
>
> A: A fence typically deters children or animals from crossing it.

The parties in *Reynaud v. Koehler* were adjacent landowners, and the issue in that case was whether a locked gate across an easement unreasonably interfered with the easement owners' ingress and egress from their property. *Reynaud*, 2005 WL 1868816, at *1. The owner of the dominant estate wanted the gate to be locked at all times for her personal protection and to protect her husband's landscaping equipment that was stored outside. *Id.* The trial court granted the dominant owner's request for injunctive relief,

and the easement owners appealed. *Id.* at \*2. The Court of Appeals noted that the dominant estate owner "ha[d] not availed herself of the opportunity to place a gate across her own driveway which would afford her some degree of security and would present no obstacle to the [servient estate owners'] use of the easement." *Id.* at \*3. In reversing the trial court's decision awarding the dominant landowner injunctive relief, the Court of Appeals stated: "We do not see how it can be reasonably asserted that a gate is *necessary* when other available options have not been explored." *Id.* The Court's determination that the gate was unnecessary in that case was "further supported by evidence showing that the gate will significantly and unreasonably interfere with the [servient estate owners'] use of the easement." *Id.* at \*4.

The reasoning of *Reynaud v. Koehler* is applicable here. As Mr. Allis testified during his deposition, it may be possible to change the orientation of the gates by erecting fences and gates along the sides of the easement, which would serve the dual purpose of protecting the children from vehicles using the right-of-way and allowing Mr. Webster open access to the strip of land without requiring him to get in and out of his vehicle to open and close the gates.

The fact that the warranty deed in which Mr. Webster conveyed the strip of land to Mr. Walker did not specify that the easement was to be kept open does not resolve the question whether the locked gates unreasonably interfere with Mr. Webster's use of it. As Mr. Webster's and Mr. Allis's depositions reveal, genuine issues of material fact exist with respect to whether the locked gates unreasonably interfere with Mr. Webster's use of the easement and whether the gates are necessary for the use and enjoyment of Mr. Walker's property. Accordingly, we reverse the trial court's decision granting Mr. Walker's motion for summary judgment on this issue.

C. Mr. Webster's Claim for Rescission Based on Fraud in the Inducement

Mr. Webster's claim for rescission was based, in part, on his assertion that Mr. Walker had engaged in fraud in the inducement. The trial court awarded Mr. Walker summary judgment on what the court termed "promissory fraud" and based its decision on the language contained in the warranty deed.

To prove his claim of fraud in the inducement, Mr. Webster must be able to show that Mr. Walker: "(1) made a false statement concerning a fact material to the transaction (2) with knowledge of the statement's falsity or utter disregard for its truth (3) with the intent of inducing reliance on the statement, (4) the statement was reasonably relied upon, and (5) an injury resulted from this reliance." *Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011) (citing *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630-31 (Tenn. Ct. App. 2000)).[1] Mr. Walker argues that Mr. Webster failed to allege fraud with particularity, as

---

[1]The elements of promissory fraud are similar, but not identical, to those of fraud in the inducement. *See*

- 8 -

required in cases asserting fraud. *See* TENN. R. CIV. P. 9.02 ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."); *Strategic Capital Res., Inc. v. Dylan Tire Indus., LLC*, 102 S.W.3d 603, 611 (Tenn. Ct. App. 2002).

Mr. Webster asserted in paragraph 14 of his complaint that he agreed to sell the Property to Mr. Walker "but only so long as Charles Webster retained an open, express easement for ingress and egress on the Property to access the remainder of [his property] from Millertown Pike." Mr. Webster then asserted the following in paragraph 23: "Charles Webster alleges that Steve Walker never intended to maintain an open right-of-way easement and that Steve Walker, or his agents, told Charles Webster whatever was necessary, whether true or false, to induce Charles Webster to transfer the Property to Steve Walker." In his statement of undisputed material facts, Mr. Webster stated in paragraph 10 that Mr. Walker acknowledged that the intent of the warranty deed was for Mr. Webster "to have his exact rights that he had before, you know, not change anything. He [Plaintiff] was good enough to give us the property. And I wanted him to have his exact rights."[2]

We find that Mr. Webster complied with Tenn. R. Civ. P. 9.02 by setting forth the circumstances constituting fraud with sufficient particularity to survive a motion for summary judgment and that Mr. Walker has failed to negate an essential element of Mr. Webster's fraud in the inducement claim or to show that Mr. Webster's evidence is insufficient to prove an essential element of his fraud in the inducement claim. *See* Tenn. Code Ann. § 20-16-101; *Rye*, 477 S.W.3d at 264. Thus, we reverse the trial court's award of summary judgment on Mr. Webster's claim for rescission.

### D. Mr. Webster's Claim for Damages and Other Relief

As stated above, Mr. Walker's motion for summary judgment addressed only two of the causes of action Mr. Webster asserted in his complaint: injunctive relief and rescission. Mr. Walker did not address Mr. Webster's request for damages that was based on Mr. Walker's alleged damage to and impermissible removal of a fence that had been located entirely on Mr. Webster's property. Moreover, Mr. Walker did not address Mr. Webster's claim for quiet title, ejectment, or for an attachment. The trial court determined that Mr. Webster's claim for rescission was not viable to the extent it was based on promissory fraud, but the court did not address the other bases of Mr. Webster's claim for rescission, including failure of consideration and false notarization. Because

---

*Shahrdar v. Global Hous., Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998) (discussing elements plaintiff must prove to prevail on promissory fraud claim) (citing *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)).

[2]The appellate record does not include Mr. Walker's deposition testimony or Mr. Walker's response to this statement by Mr. Webster.

the trial court failed to address Mr. Webster's claim for damages and other causes of action, we remand the case for further proceedings to address these claims.

## III. CONCLUSION

We reverse the trial court's award of summary judgment and remand the case for further proceedings in accordance with this opinion. Costs of this appeal shall be taxed against the appellee, Steve L. Walker, for which execution shall issue if necessary.

_____

ANDY D. BENNETT, JUDGE